## LYNDEBOROUGH GLASS COMPANY vs. MASSACHUSETTS GLASS COMPANY.

The superintendent of works of a company incorporated to manufacture and sell glass bought glass, as the company's agent, to keep up their stock while their works were being repaired. The purchase was known and sanctioned by all the officers and stockholders but one, and that one knew it soon after it was made, and no action was ever had repudiating it. *Held*, that in a suit against the company by the seller of the glass, these facts would warrant a finding that the superintendent was authorized by the company to purchase the glass.

A company newly incorporated "for the purpose of manufacturing and selling glass" contracted to purchase glass ware, for the purpose of keeping up their stock and supplying customers until the works which they had bought from a company preceding them were put in repair. *Held*, that the contract was not *ultra vires*.

CONTRACT on an account annexed, the items of which were for glass ware sold and delivered. Trial in the Superior Court, before *Brigham*, C. J., without a jury, who reported the case for the consideration of this court substantially as follows:

The defendants were incorporated in 1867, under the Gen. Sts. *c.* 61. The articles of association, which were signed by Samuel Oakman, George W. Pinkerton, J. Wade Davis, Joseph H. Orcutt and George W. Park, stated that the company was incorporated "for the purpose of manufacturing and selling all the varieties of glass." The five signers of the articles subscribed for all the stock. At the first meeting of the corporation, held on May 24, 1867, George W. Pinkerton was chosen treasurer and the other stockholders directors; and by-laws were adopted, one of which was as follows: "The directors shall have the general supervision and control of the affairs of the corporation; they may appoint and regulate the powers and duties of such agents and operatives as may be necessary in carrying on the business of the corporation." At the first meeting of the directors, held on the same day, Oakman was chosen president; and on June 5, 1867, the directors voted that George H. Smith should be employed as superintendent of works.

The defendants succeeded a former company of the same name, whose furnaces and machinery were transferred to them upon their organization. Immediately after the organization was com-

pleted, the defendants opened an office in Boston, and displayed samples of glass ware therein for sale. Repairs upon the furnace and machinery were commenced, but were not completed so as to enable the defendants to begin the manufacture of glass there until November 1, 1867. After the office was opened, Smith, holding himself out as acting, and assuming to act as agent of the defendants, solicited and received orders for glass ware, in behalf of the defendants, and the ware furnished by the plaintiffs was contracted for by Smith to fill the orders thus received. These transactions were engaged in by Smith with the knowledge and approval of Oakman and Pinkerton; and Orcutt and Davis had a general knowledge of them, and made no objection thereto. The purpose of these transactions was to establish a trade on which the defendants could rely when their works should be in operation, and to fill orders accepted for the defendants, for the purpose of retaining the old customers of a former company of the same name, and obtaining new ones for the trade of the defendants when their works were ready. The goods purchased from the plaintiffs were designed to be sold again, and not to be used by the defendants in their manufacturing business. They were purchased under an agreement between the plaintiffs and Smith, purporting to act as agent of the defendants.

There was no vote of the defendants or of the directors authorizing the making of this agreement with the plaintiffs or sanctioning or adopting the same, but the officers who had part in the transactions assumed to act *bona fide* as the agents of the defendants therein, and held themselves out as thus acting. All the stockholders knew of these transactions soon after the last of them took place and before suit brought, and no action or vote was ever taken by the defendants or the directors repudiating them.

Upon these facts the judge ruled that the plaintiffs were entitled to recover, and found a verdict for them. If upon the facts reported such ruling and finding should be sustained, judgment to be entered upon the verdict; otherwise, judgment for the defendants.

*G. W. Park*, for the defendants.

*G. Stevens & W. H. Anderson*, for the plaintiffs.

MORTON, J. In this case, trial by jury was waived in the Superior Court, and it was heard before the presiding justice, who found for the plaintiffs. The only question which we can consider is, whether this finding can be sustained upon the evidence. There was sufficient evidence to sustain the finding that Smith, who made the contract for the purchase of the goods sued for, was authorized to do so by the corporation. He was their " superintendent of works," he acted as an agent of the corporation in this purchase, and the goods purchased were received by and went to the benefit of the corporation. A formal vote giving him authority was not necessary. He made the contract with the knowledge and sanction of all of the officers and stockholders except one, and that one was informed of it soon after the goods were purchased, and no action was ever had repudiating it. There was sufficient evidence to justify a finding either of an original authority or of a subsequent ratification by the corporation. *Sherman* v. *Fitch*, 98 Mass. 59.

But the defendants contend that the corporation had no power or authority to make this contract; that it was *ultra vires*, and therefore cannot be enforced. We think it very clear that it was within the power of the corporation to make such a contract as this. The defendants were incorporated " for the purpose of manufacturing and selling all the varieties of glass." They succeeded a former company which had been engaged in the same business; it was important that they should retain the old customers. They were repairing their manufactory and machinery, and these goods were bought to keep up their stock and enable them to fill orders from their customers until they could supply themselves from their own manufactory. Such purchases are auxiliary and incidental to the main purposes of their incorporation, and are fairly within the scope of the powers conferred upon them by law. *Brown* v. *Winnisimmet Co.* 11 Allen, 326.

*Judgment for the plaintiffs.*