## HILLSBOROUGH.

---

## PETERBOROUGH R. R. Co. *v.* NASHUA & L. R. R. Co.

A corporation is estopped to deny its liability under a contract, on the ground that its officers were not technically authorized to make it, or that its own proceedings in the premises were irregular, when the contract was within the scope of its powers, was entered into by proper officers, and has been recognized by corporate acts.

Section 8, c. 134, Gen. St., prohibiting a corporation from selling or disposing of its capital stock at less than par, except at auction, for nonpayment of assessments, does not apply to the holder of stock which the corporation has pledged or mortgaged.

COVENANT BROKEN, for rent of the plaintiffs' railroad for six months ending April 1, 1879. Writ dated April 5, 1879. Facts

found by the court. The plaintiffs allege the execution by the defendants of a contract under seal, dated May 6, 1872, for hiring the plaintiffs' railroad for a term of twenty years. The defendants deny making such contract, and plead in set-off a note made by the plaintiffs to the defendants for $41,500, and interest from October 1, 1878.

Various objections, which it is not necessary to report, were made by the defendants as to the legality of the directors' meetings of the defendant corporation, at which their officers were authorized to make and execute said contract, and as to the authority of their officers in the premises.

The rent accruing prior to October 1, 1878, on said contract, was paid by the defendants according to the terms of the contract. The defendants have been and now are in the possession and operation of the plaintiffs' railroad. "In compliance with said contract of May 6, 1872, the Peterborough railroad was located and constructed under the sole direction, control, and agency of the manager of the Nashua & Lowell Railroad; and on the 24th day of August, 1875, the board of directors of the defendant corporation referred the subject of the amount of rental due under the contract to a committee, who, having investigated the amount of the cost of the Peterborough sailroad, reported that the cost of that road, upon which the rental of three per cent. semi-annually was to be paid, was at that time $569,962.30. And thereupon the directors of the defendant corporation voted that the manager be authorized to settle with the Peterborough railroad, in accordance with the spirit and terms of said report, and paid the rental accordingly."

The plaintiffs excepted to the ruling of the court, allowing the defendants to file in set-off to the plaintiffs' claim the promissory note of the plaintiffs to the defendants, contending that the defendants have no legal claim upon the note against the plaintiffs, and that it is without consideration and void because the only pretended consideration for it was the advance by the defendants to the plaintiffs of the amount in cash of the principal of the note, being the amount at par of $100 per share of a number of shares in the capital stock of the plaintiff corporation issued by the plaintiffs to the defendants, and the certificates of which shares were accepted and received of the plaintiffs by the defendants, and have ever since been held and are now held by the defendants on account of said money so advanced by the defendants, and as collateral security for the same; and that the defendants, at the time of advancing said money and receiving the certificate of said shares to the amount thereof at par, and taking said note to the same amount, also received an agreement in writing, signed by individuals interested in the construction of the plaintiffs' railroad, of which the following is a copy:

"This agreement, made this 16th day of Sept., 1873, between

the Nashua & Lowell Railroad Corporation, party of the first part, and George Stark (and 13 others) severally and not jointly of the second part, witnesseth:

"The party of the first part agree to loan to the Peterboro' R. R. Co. the sum of $150,000, and to receive for such loan the promissory note of said Peterboro' R. R. Co., payable with interest on the first day of Jan., 1875, secured by the transfer and deposit as collateral security of 1,500 shares of the capital stock of said Peterboro' R. R. Co., with the right of said first party to sell and transfer the whole or any portion of said shares at not less than their par value at any time prior to said Jan. 1, 1875, and apply the proceeds of such sale to the payment of said loan; and in case said loan shall not have been fully paid on said first day of Jan., 1875, then to sell and transfer said shares without condition, and apply the proceeds thereof to the payment of said loan.

"And said first party further agrees to sell and transfer on demand, at any time prior to Jan. 1st, 1875, such of said shares as it may hold at the time of such demand, to said second parties or either of them, upon the payment or tender of payment of the par value thereof. And said second parties, in consideration of the loan aforesaid, and of the other agreements herein contained, severally agree, in case said loan shall not be fully paid to said first party on or before said first day of Jan., 1875, that they will, on the demand of said first party, each purchase of said first party, on or before said first day of Jan., 1875, one fifteenth part of the shares of the stock of said Peterboro' R. R. Co., so then held by the first party as collateral as aforesaid, and pay to said first party therefor the par value of said shares, viz., the sum of $100 for each of said shares, the proceeds to be applied by said first party to the payment of said loan aforesaid."

The plaintiffs objected that, as a dividend-paying corporation had no power under the law to dispose of its capital stock but by sale of its shares at par, except in case of a sale at auction for non-payment of assessments, the transaction between the parties was in law a purchase by the defendants of the shares issued by the plaintiffs, and a payment therefor with the money so advanced, and that there was no consideration for the note; but the court held otherwise, and the plaintiffs excepted.

The court found that the agreement of May 6, 1872, was duly executed, and a valid lease; that the defendants had occupied the plaintiffs' railroad under said lease; and that the plaintiffs were entitled to recover of the defendants, as rent due and payable April 1, 1879, for the six months preceding, the sum of $17,107.50, the same being three per cent. upon $570,250, which sum the court found to be the cost of the plaintiffs' road, upon which rental is to be paid by the terms of the lease. The court also found that the plaintiffs were indebted to the defendants April 1, 1879, in the sum of $42,745 on the note filed in set-off, and that the defendants

were entitled to a judgment for the balance due the defendants, after payment of the plaintiffs' claim, in the sum of $25,637.50, with interest from April 1, 1879.

*George Y. Sawyer & Sawyer, Jr.* (with whom were *Burns* and *J. H. George*), for the plaintiffs.

The facts in connection with the issuing to the defendants of the fifteen hundred shares of the plaintiffs' stock are, substantially, that the sum of $150,000, being the exact amount of the par value of the fifteen hundred shares, was advanced by the defendants to the plaintiffs in September, 1872, under an agreement in writing, entered into between the defendants and fourteen individuals, that the money should be treated as a loan, and the note of the plaintiffs given for it payable January 1, 1875, secured by the fifteen hundred shares as collateral; and the agreement further stipulating that the defendants should have the privilege, before the note matured, of selling the shares at par; but if the note was not paid at maturity, then of selling such shares as remained on hand unsold at pleasure, without condition as to price; and further stipulating, in substance, that the fourteen persons entering into the agreement with the defendants should, if requested, take off the defendants' hands and pay for it at par fourteen fifteenths of the shares unsold at the maturity of the note. By the terms of the agreement, in case the note is not paid at maturity, and none are sold prior thereto, the defendants have the right to sell all the shares as the agent and on account of the plaintiff corporation at less than par, and in any event one fifteenth of the shares then would remain in the defendants' hands, subject to the pledge, if valid, with the power under the statute, *c.* 125, *s.* 4, Gen. St., to sell it at auction for any price it may bring, and with power under the agreement to sell without limitation as to price. We submit that this arrangement is in violation of the provisions of Gen. St., *c.* 134, *s.* 8, then in force, as well as of *s.* 8, *c.* 148, G. L. The defendant corporation is *in pari delictu* in this violation of the statute, and asks the court to enforce the note given upon this unlawful arrangement as a set-off in the case. By holding the note void, and the money advanced to be in payment for the shares, the illegality of the transaction is removed, and at the same time no injustice is done to the defendant corporation, as they have their remedy on the fourteen individuals with whom they contracted.

*Bailey, H. Bingham,* and *Brooks* (of Massachusetts), for the defendants, furnished no brief.

FOSTER, J. The defendants by accepting the lease of the plaintiffs, occupying the plaintiffs' railroad as a tenant, paying the rental agreed upon for several years, and deriving all the advantages

contemplated by the agreement of May 6, 1872, are estopped as against the plaintiffs to deny the authority of their agents in making and executing the agreement, or to question the regularity of their own proceedings in the transaction. " The same presumptions are applicable to corporations as are continually made in relation to private persons." *Hilliard* v. *Goold*, 34 N. H. 230, 239; *Sherman* v. *Fitch*, 98 Mass. 59. No suggestion is made that the persons who entered into this contract with the plaintiffs were not proper agents or officers of the defendant corporation to do this business; nor is it claimed that the meeting of the board of directors of the defendant corporation, of August 24, 1875, was illegal. The subject-matter of the contract, also, was such as both parties could legally act upon. Laws of 1869, c. 76. " If officers of a corporation openly exercise a power which presupposes a delegated authority for the purpose, and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers will be deemed rightful, and the delegated authority will be presumed." *Bank* v. *Dandridge*, 12 Wheat. 64, 70 ; *Lyndeborough Glass Co.* v. *Mass. Glass Co.*, 111 Mass. 315 ; *M'Laughlin* v. *Detroit & M. R. R. Co.*, 8 Mich. 100 ; *Olcott* v. *Tioga R. R. Co.*, 27 N. Y. 564 ; *Glidden* v. *Unity*, 33 N. H. 571 ; Ang. & Ames Corp., s. 304 ; Potter Corp., s. 155. It therefore becomes unnecessary to consider the various objections taken by the defendants at the trial, because by their own acts of ratification they are estopped to deny their liability.

By the terms of the agreement of September 16, 1873, it appears that the defendant corporation agreed to loan to the plaintiff corporation $150,000, for which the latter were to give their promissory note, payable on the 1st day of January, 1875, and to transfer as collateral security 1,500 shares of their capital stock, the par value of which was $100. The balance due on the note the defendants seek to have allowed in set-off in this action. But the plaintiffs claim that there was no consideration for the note, although the agreement would seem to leave no room for doubt on that point. As we understand it, the plaintiffs' position is this: It is provided in the written agreement that if the note is not paid prior to January 1, 1875, the defendants are to have the right after that time of selling the stock at less than par. But *s.* 8, *c.* 134, Gen. St., provides that " No corporation shall sell or dispose of any of the shares of its capital stock at a price less than the par value thereof, except in the case of sales of shares at auction for non-payment of assessments." Therefore, the plaintiffs contend, the contract in this respect being prohibited should be so construed as to avoid the illegal part of it; that is, it should be held that there was an absolute sale of the 1,500 shares, and a payment for the same, on which theory the note would be without consideration.

But it is admitted that the transfer of the stock was intended

as collateral security for the plaintiffs' note. Assume that nothing was said in the agreement as to the price for which the pledgee might sell the stock, it could not be claimed that he was bound by this statutory prohibition, and could not dispose of the stock for less than par. If the stock was pledged, then the pledgee could not be the agent of the pledgeor, and so only authorized to do what his principal might do, because it was his primary object to get his own money back again, and not to work for the interests of the pledgeor, or to represent him in any respect. The statute does not say that no sale of stock shall be made below par; but it is only the corporation that is thus prohibited. A person to whom the corporation has sold stock may dispose of it as he sees fit, for more or less than par. And in the absence of any express prohibition applying to a pledgee or mortgagee, we see no reason why he should not be allowed to sell his stock at the best price he can get, although that may be for less than its par value. The set-off was therefore properly allowed, and there should be

*Judgment for the defendants.*

CLARK, J., did not sit: the others concurred.