MILTON WELSH, Respondent, v. THE FERD HEIM BREWING COMPANY, Appellant.

Kansas City Court of Appeals, January 18, 1892.

1. **Landlord and Tenant :** SUFFICIENT SIGNING OF LEASE : STATUTE OF FRAUDS.   Where each party to a lease signs a copy to be kept by the other, such signing reasonably and substantially fulfills the object and aim of the statute of frauds.

2. ———— : CORPORATIONS : AGENT'S POWER : RATIFICATION.   Though the secretary of a corporation has no power to sign a lease on its behalf, yet where he does so, and the corporation for ten months pays the rent by its check, and enters the payments on its books, and writes the landlord a letter showing clear recognition of the lease, such acts as these constitute a complete ratification of the act of the secretary.

3. —— : —— : POWER TO LEASE: A brewing corporation, having by its charter power to handle, manufacture and sell beer, and to lease real estate proper for carrying on the business, has power to lease a saloon stand with the view of introducing and selling its own beer, and the fact that it intended to and did sublet the premises to another to sell its beer as well as to keep a regular saloon where whiskey was also sold, of all which the landlord knew, will not vitiate the lease.

4. Corporation : ULTRA VIRES ACTS NOT VOID : HOW AVOIDED. In order in a collateral proceeding to declare the *ultra vires* acts of a trading corporation void, it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but, in addition, to declare that when it exceeds those restrictions the act should be void. If such intention does not exist in the charter, the state alone can question such acts as *ultra vires*, unless the contracts should be against public policy or good morals.

*Appeal from the Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Ben. T. Hardin,* for appellant.

(1) The paper on which this suit is based, and which was admitted in evidence, is no lease, because it was never signed by the one mentioned as lessor, and it was error in the court to admit it in evidence. *Clemens v. Broomfield,* 19 Mo. 118 ; *Hyatt v. Church,* 10 Mo. App. 582 ; Gear on Landlord & Tenant, sec. 77, and cases cited. (2) And, even if it had been signed by Welsh, there is absolutely no evidence that Smith or Head had any authority for taking such a lease on behalf of the corporation. *St. Louis v. Clemens,* 43 Mo. 395 ; *Bank v. Hogan,* 47 Mo. 472 ; *Matthews v. Skinker,* 62 Mo. 329 ; 98 U. S. 621 ; *Credit Co. v. Machine Co.,* 54 Conn. 357 ; s. c., 1 Am. St. Rep. 123 ; *Elevator Co. v. Railroad,* 85 Tenn. 703 ; s. c., 4 Am. St. Rep. 798. (3) Even the corporation itself could not have entered into such a contract ; the enumeration of certain powers in its

charter excludes all others. *Thomas v. Railroad*, 101 U. S. 71 ; *Dairy Co. v. Mooney*, 41 Mo. App. 665 ; *Railroad v. Leely*, 45 Mo. 212 ; *Drug Co. v. Robinson*, 81 Mo. 19 ; *Thomas v. Land & Coal Co.*, 43 Mo. App. 653, *loc. cit.* 656. ( 4 ) Most assuredly a manufacturing and business corporation cannot become security for individuals, as all the evidence shows was attempted to be done in this case. *Keling v. Brewing Co.*, 38 Mo. App. 182 ; *Lucas v. Trans. Co.*, 70 Iowa, 541 ; *Davis v. Railroad*, 131 Mass. 258; s. c., 41 Am. Rep. 221 ; Const. Mo., art. 12, sec. 7; R. S. 1889, sec. 2508 ; *Navigation Co. v. Railroad*, 130 U. S. 1 ; *McPherson v. Foster Bros.*, 43 Iowa, 48. ( 5 ) A corporation cannot ratify an act which, by the terms of tis charter, it has no right itself to do. *Marsh v. Fulton Co.*, 10 Wall. ( U. S.) 676 ; 2 Beach on Corp., secs. 438, 439. A corporation cannot ratify an act of an agent which it could not in the first instance have directly empowered him to do. *Martin v. Zellerbach*, 38 Cal. 300 ; *Barton v. Road Co.*, 17 Barb. 397 ; *Taymouth v. Koehler*, 35 Mich. 22 ; *Estey v. Inhabitants of Westminster*, 97 Mass. 324; *Downing v. Road Co.*, 40 N. H. 230 ; *College v. City of Dubuque*, 13 Iowa, 555 ; *Peterson v. Mayor, etc.*, 17 N. Y. 449 ; *Tracy v. Guthrie* 47 Iowa, 27 ; 2 Morawetz on Corp. [ 2 Ed. ] secs. 580, 622 ; *Hyde v. Larkin*, 35 Mo. App. 365 ; *Land Co. v. Jeffries*, 40 Mo. App. 361; *Besch v. Mfg. Co.*, 36 Mo. App. 333 ; *Sanford v. Tremlett*, 42 Mo. 384; *City of Kansas v. Railroad*, 77 Mo. 188.

*Milton Moore* and *E. G. Vaughan*, for respondent.

( 1 ) The court properly gave instruction, numbered 1, asked by the plaintiff. *Grant v. White*, 42 Mo. 285 ; R. S. 1879, sec. 3078 ; *Russell v. Irwin*, 38 Ala. 44–9. ( 2 ) The payment of rent in the absence of fraud or mistake is conclusive evidence of tenancy and possession

of the property on which rent was paid. Bigelow on Estoppel [5 Ed.] 511; Taylor on Landlord & Tenant [8 Ed.] sec. 23. (3) The lease in question is good without the corporate seal of the defendant. *Board of Ed. v. Greenabaum*, 39 Ill. 609; *Gray v. Ihm*, 3 Mo. App. 588; *Crawford v. Longstreet*, 13 Vroom, 395. (4) The lease was signed by the secretary and ratified by the company. The letter of November 6 is conclusive on this point. *Hose Co. v. King*, 4 Am. Corp. Cases, 344; *Chouteau v. Allen*, 70 Mo. 290–329. (5) A corporation to attain its legitimate objects may deal as an individual who seeks to accomplish the same ends. *McKierman v. Linzen*, 56 Cal. 51; *Bank v. Jacobs*, 6 Humph. 515–25. (6) The defendant was not restricted as to the place nor in what quantities beer should be sold, nor was it required to sell exclusively its own manufacture. *Glass Co. v. Glass Co.*, 111 Mass. 315; *Glass Co. v. Demy*, 16 Mass. 94; *Brewing Co. v. Flannery*, 27 N. E. Rep. 286; *Trans. Co. v. Russell*, 26 Pac. Rep. 715. (7) The lease read in evidence shows upon its face that the building in question was rented for the sale of beer and whiskey, and its execution was within the power given the defendant by the seventh paragraph of its articles of association. *Drug Co. v. Robinson*, 81 Mo. 18; *Land v. Coffman*, 50 Mo. 243; *Shewalter v. Power*, 55 Mo. 218; *Kitchen v. Railroad*, 59 Mo. 514; *Lungstras v. Ins. Co.*, 57 Mo. 107; *Ins. Co. v. Hauck*, 71 Mo. 465.

ELLISON, J.—This action is for rent arising under written lease for the term of three years at $80 per month. Defendant paid the rent for the first ten months, and then repudiated the lease. This action is for the rent due for the first twelve months following those for which the rent was so paid. Plaintiff recovered below and defendant appeals. The property was actually occupied by one Wolf who kept a saloon therein, in which he sold both beer and whiskey. Wolf

had approached plaintiff with a view of renting the
property, but plaintiff refused to rent to him. It was
then proposed by either Wolf or defendant that defend-
ant would guarantee the rent if the plaintiff would
contract with Wolf. Plaintiff refused to do this, but did
make the lease to defendant for the term and at the
rate mentioned, and received defendant's checks for the
period stated, each month, in payment of the rent. The
lease was executed by the plaintiff himself writing it
out, signing it, and giving it to defendant's agent that
defendant might make a copy and sign and return said
copy to him, defendant keeping the one first signed by
plaintiff. The copy was returned to plaintiff signed:
"Ferd Heim Brewing Co. (Seal.) Per W. J. Head,
Secretary." Several questions have been presented by
counsel which we have given the full consideration their
importance demands.

I. It is first contended that the alleged lease is no
lease, since it is not signed by the lessor. And so it
is decided in *Clemens v. Broomfield*, 19 Mo. 118, as well
as in many other cases in other jurisdictions, that it is
requisite to the validity of a lease, where the letting is
for a longer period than allowed by verbal contract, that
it should be signed by the lessor. This being so, we
will consider what is a sufficient signing within the
spirit and meaning of the law. The object of the
statute of frauds and perjuries was to prevent fraud
and perjury by requiring that the lease should be put
in writing and signed by the parties. This signing thus
directed by the statute does not necessarily mean that
the parties shall append their names to the end of the
written instrument, but, rather, any certain, definite
acknowledgment of the lease over the signature of the
party, whether that be on the face or back of the lease,
or even on a separate paper, as in a letter. Taylor's
Land & Ten., secs. 35, 36. In *Whaley v. Hinchman*,
22 Mo. App. 483, telegrams were held sufficient in a
contract for the sale of real estate. In *Hoover v. Oil*,

Co., 41 Mo. App. 317, a contract evidenced by a letter from the lessee and indorsed "accepted," and signed by the lessor, passed unquestioned. But in this case the lease is signed by each party alone signing the duplicate or copy kept by the other, and this we believe reasonably and substantially fulfills the object and aim of the statute. *Campeu v. Lafferty*, 43 Mich. 429; *Nicol v. Burke*, 78 N. Y. 580.

II. It is next objected that the secretary had no authority to sign the corporate name of defendant under the laws of the corporation. We may concede this, and yet the point cannot avail defendant under the circumstances disclosed by the testimony. The uncontradicted evidence is that the defendant regularly, for ten months, sent its check to plaintiff for the rent, and that entries of these payments were upon its books. And, furthermore, defendant, by a letter addressed to plaintiff and produced at the trial, shows a clear recognition of the lease. These things constitute a complete ratification of the act of the secretary.

III. The next contention is that the act of the corporation was *ultra vires*. Defendant's charter contains the following provision: "To *handle*, manufacture and *vend malt*, *ale*, *beer* and ice, natural and artificial, *and to that end* to purchase, own *and lease*, or either, brewing establishments, icehouses, *real estate and such other property* or machinery needful, *incident or proper* for carrying on the business *of doing the things aforesaid.*"

Trading corporations cannot be bound by contracts wholly foreign to the purposes for which they were established. But it is a rule of construction of charters or articles of incorporation of trading corporations that they should be so construed as to permit them to prosecute their legitimate business in the same manner that an individual would who was engaged in a similar enterprise. And it may, therefore, enter into any contract which is *reasonably* adapted to further the enterprise

for which it was chartered, unless restrained by its
charter.   1 Morawetz on Corp., secs. 320, 336, 364.   This
general statement of the rule of construction finds sup-
port in a large number and variety of adjudications.   We
will instance only a few by way of illustration.   A cor-
poration established "for the purpose of manufacturing
and selling all the varieties of glass may contract to
purchase glassware from a like corporation to keep up
its own stock and supply its customers while its works
are being put in repair.   'Such purchases,' says the
court, 'are auxiliary and incidental to the main pur-
poses of their incorporation, and are fairly within the
scope of the powers conferred upon them by law.'"
*Lyndeborough Glass Co. v. Glass Co.*, 111 Mass. 315.
A corporation incorporated "for the purchase of lands,
the surveying and platting of town sites and selling
town lots and other lands" may contract with the
owner that, if he will remove his bank, bar and restau-
rant, located elsewhere, to the town site, the company
will convey to him certain lots and pay him $1,000.
*Sherman Center Town Co. v. Russell*, Supreme Court,
Kansas, May 9, 1891.

   In a case closely related to this which arose in
Illinois, of *Heim Brewing Co. v. Flannery*, under a
charter, if any different, less broad than the one here in
controversy, the supreme court of that state in speaking
to the point that "the defendant had not power to
lease the property for saloon purposes," said:   "The
defendant, at the time said contract was entered into,
was a corporation engaged in the manufacture and sale
of beer, and the premises covered by the lease were, and
for a considerable time had been, occupied and used by
the plaintiffs as a saloon, where, as the evidence tends
to show, large quantities of beer had been and were
being sold at retail.   The purpose of the defendant in
entering into said contract, as plainly appears both from
the contract itself and from the surrounding circum-
stances, was to increase the sale and consumption of beer

of its own manufacture. This was sought to be accomplished, *first*, by getting control of the premises where the plaintiffs had established and were carrying on a large saloon business; and, *secondly*, by obtaining from the plaintiffs a contract not to engage in the saloon business themselves, nor allow that business to be carried on in the locality on premises owned or controlled by agreement. This agreement was to run for the term of five years, and during that time the plaintiffs were prohibited from selling any of their said property without a provision prohibiting its use for carrying on the liquor business, and the same stipulation was made to apply to any property the plaintiffs might purchase during the term of said lease. The consideration to be paid for all these various concessions made by the plaintiffs was $3,000, payable in installments of $50 each, at the end of each month. * * * This was a contract which violated no principle of law, and which the parties were clearly competent to make, and no reason is apparent why it should not be enforced."

So in a case of a *quasi* public corporation it was held by the supreme court of Missouri, that it was not *ultra vires* a corporation organized for a great public enterprise in building a bridge across the Mississippi river to contract with a newspaper whereby the corporation sold a block of its stock to the newspaper for a certain sum, to be paid for in articles of reading matter (not editorials) promoting the success of the enterprise. *Liebke v. Knapp*, 79 Mo. 22.

Now, how do these principles dispose of defendant's contention in this case? The articles of incorporation here authorize the defendant to handle, manufacture and sell beer, and to that end to lease real estate proper for carrying on the business of doing that thing. The face of the whole case shows, without doubt or uncertainty, that the object defendant had in view in renting the premises in dispute was to introduce and sell the company's beer. It ought hardly to be doubted that

such an object was within, if not the express, the plainly implied, scope of its chartered power.

The only matter deserving further consideration in this branch of the case is the fact that defendant intended and did sublet the premises to one Wolf to sell the company's beer, as well as to keep a regular saloon where whiskey was also sold, and that plaintiff knew this. We will refer to this objection in the consideration of two important authorities cited, among others, by defendant's counsel. One of these cases is *Felon v. Brewing Co.* (Supreme Court, New York, fifth department, June, 1891). It is there held that a brewing company stated to be organized under the "general manufacturing companies' act for the purpose of the manufacture and sale of beer and malt" could not become surety of a tenant for the rent of a summer hotel, although the tenant agrees to buy his beer of the company if it would guarantee the payment of rent. This was what was decided by that case, and it is not necessary to our position in this case to combat that decision. But the facts in that case are claimed by counsel to be substantially like these in every particular. We do not so consider them. The corporation in that case signed the lease with the tenant merely as his surety. An expression in that opinion may be misunderstood. It is not said in the opinion that the lease was in the name of the corporation, but that the secretary of the corporation executed the lease in the name of and for the corporation; the tenant also executed it for himself. The corporation had no control over the lease or the property, nor had it any benefit from the lease as such. While in the present case Wolf who occupied the property had nothing to do with the lease nor any interest in it as such. The lease was to defendant, who took the keys to the building and paid the rent stipulated in the lease. Plaintiff had no connection with Wolf. It is true defendant let Wolf occupy the property, but he paid the rent to defendant. *For*

aught it concerned plaintiff, defendant could have let Wolf occupy without charge. We consider the cases wholly unlike. We may add that it does not appear from that case what the exact scope of the company's powers was. The other case referred to is that of *Davis v. Organ Co.*, 131 Mass. 258. An organ company was limited to "the manufacture and sale of Reed organs and other musical instruments." The opinion is lengthy, but we have no objection to the general scope of the argument therein, nor do we have any criticism to make on the conclusion to which the court arrived. The facts briefly stated were that the company, having in view the probable increase of the sale of its musical instruments, agreed to contribute towards making up a deficiency (if any) that might arise towards defraying the expenses of the "World's Peace Jubilee and International Musical Festival," to be held in Boston. It is held that this was *ultra vires* the corporation. The contract in that case was simply an attempt of a trading corporation to support a public festival. We will assume that the court in that case would not have held a contract for the lease of a building in which to sell the company's musical instruments *ultra vires*. So in this case we would, perhaps, hold as *ultra vires* a contract of this defendant, agreeing to defray the expense of a public festival in this city, although the company might expect that the crowd which would assemble from the adjacent country would consume much of its beer. But this is quite another thing from declaring, that we will hold such company to its contract in leasing a place where its beer may be sold. Our conclusion is that the contract in this case is within the the charter power of defendant.

IV. The foregoing is sufficient to dispose of this case, and it is not absolutely necessary to say anything further; but we will nevertheless add, since the question arises in Glass against this defendant argued at this term, that defendant has no standing from another

consideration. That consideration is this: If the power of the defendant corporation had been transgressed by the execution of this lease, who is it that can raise the question, or take advantage of such transgression? A trading corporation can only exercise those contractual powers which are expressly granted by its charter, or which are necessarily implied; beyond this it is powerless. But all corporation contracts which are *ultra vires* are not void. Such corporations get their powers from the state, and obedience to the restrictions of its charter is due the state. Its obligations are primarily with the state. So it has been decided in *St. Louis Drug Co. v. Robinson*, 81 Mo. 18, in an opinion by HENRY, J., that, notwithstanding the drug company had become a mere accommodation indorser, yet the question of *ultra vires* could only be raised in a direct proceeding by the state against the corporation. That it could not be otherwise raised by any other party, except when the charter *not only* specifies (thereby limiting) the business in which the corporation may engage, *but by express terms*, or by fair implication from its terms, *invalidates* transactions outside of those terms. In other words, I understand the true rule on this matter to be that it must be shown to be the intention of the charter, as gathered from its terms, not only to restrict the business of the corporation to certain things, but, in addition, to declare that when it exceeds these restrictions the act shall be void, before any other party than the state can question such act as *ultra vires*, unless the contract should be against public policy or good morals. In this case, the defendant undoubtedly had authority to sell beer, and to that end to lease property, and there is certainly no express or clearly implied declaration that if they made such a contract as is here sued upon that it should be void. So, if we should concede that the contract was beyond the charter power of the defendant, we would not permit such objection to be raised by it in

this action. We should rather say with Chancellor KENT in *Silver Lake Bank v. North*, 4 John. Ch. 370, that, if this company "should pass the exact line of their power, it would rather belong to the government (of Missouri) to·exact a forfeiture of the charter, than for this court, in this collateral way, to decide a question of misuser, by setting aside a just and *bona fide* contract." These views are directly supported by *Leasure v. Hillegas*, 7 Serg. & R. 313, and *National Bank v. Matthews*, 98 U. S. 621; *Slater Woolen Co. v. Lamb*, 143 Mass. 420; *Riche v. Railroad*, L., R. 9 Exch. 263–5.

The judgment will be affirmed. All concur.