EVANS v. JOHNSON.

(Circuit Court of Appeals, Eighth Circuit.   October 6, 1906.)

No. 2,243.

CORPORATIONS—ULTRA VIRES ACT—GUARANTY—ESTOPPEL.

H., being indebted to claimant on certain notes and desiring to form a corporation to take over his merchandise business, informed claimant of his intention. Claimant demanded that, if H. did so, the corporation should guaranty the paper. H. formed the corporation and sold the business to it, taking in return full paid capital stock, after which H., as president of the corporation, indorsed a guaranty on the notes to claimant on behalf of the corporation, after which H. acquired all of the corporation's stock. *Held*, that the corporation, never having received any benefit from its ultra vires act in guarantying such notes, was not estopped to deny the power to execute such guaranty.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 12, Corporations, §§ 1554–1558.]

Appeal from the District Court of the United States for the District of Minnesota.

Appeal by the trustee in bankruptcy of the Hansen Mercantile Company from an order allowing the claim of Johnson. In February, 1901, Johnson sold to Hansen his interest in a mercantile business previously owned in partnership, and in part payment took Hansen's personal notes for $9,000. Hansen continued the business in his own name for nearly two years. He removed the goods to another town and reduced the principal of the notes to $7,500. In January, 1903, he caused the mercantile company to be incorporated under the laws of Minnesota with power as expressed in its charter to transact a mercantile business. He sold to the company his stock of merchandise then on hand for $20,000 of the capital stock of the company, fully paid. The merchandise was fairly worth the par value of the stock. About eight months afterwards, August, 1903, he executed to Johnson renewal notes for the balance of his indebtedness. These notes were dated back to February, 1903, and upon each thereof was a form of guaranty which Hansen as president executed in the name of his company. It is upon the guaranty of these notes that Johnson bases his claim. At the time Hansen did this there were outstanding in the hands of individual holders the following amounts of the capital stock of the company: $17,000 held by Hansen, $1,500 by his wife, $1,500 by clerks in the service of the company who purchased from Hansen for valuable considerations, and $5,000 by another party who bought direct from the company at full par value. When Hansen executed the renewal notes, he delivered his $17,000 of stock to Johnson as collateral, and the latter continued to hold it until the hearing before the referee. Hansen never obtained from the directors or stockholders of the company authority to obligate it for the payment of his personal debts nor was his action ever confirmed by them. No entry of the liability so attempted to be created appeared upon the books of the company, and no consideration for the guaranty moved to it. To establish a consideration and the elements of an estoppel Johnson testified that in November, 1902, about two months before the incorporation of the company, Hansen mentioned to him his purpose in that connection, and that he (Johnson) said that in such case Hansen would have to either pay or secure him; that he would not allow him to put his personal assets into a corporation

while owing him $7,500 past due, but that, if he gave Hansen more time on the indebtedness, the latter would "have to guaranty the paper by the corporation soon after he got incorporated." Johnson testified that Hansen agreed to this, and we will consider the case according to his version, though there was a conflict in the evidence. In a legal and obligatory sense Johnson did not extend the time upon Hansen's indebtedness. The renewal notes were payable upon demand, and Johnson was at liberty to proceed upon them at any time after their execution. Four payments of interest upon these notes were made by the checks of the company. The first, for $600, was charged to Hansen's personal account upon the books of the company, and the other three, aggregating $600, were entered as expense items with nothing to indicate to whom they went. The company became bankrupt in July, 1904. The referee allowed the claim and the allowance was approved by the District Court.

W. A. Sperry (Lewis L. Wheelock, on the brief), for appellant.

Lafayette French and Henry A. Morgan (John F. D. Meighan, on the brief), for appellee.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

HOOK, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The bankrupt corporation had no power under its charter to guarantee the obligations of others. Therefore to sustain his claim Johnson invokes the Minnesota doctrine of estoppel in connection with a contention that the company received a consideration for the guaranty of the notes. Wilis v. Sanitation Co., 53 Minn. 370, 55 N. W. 550; Kraniger v. Building Society, 60 Minn. 94, 61 N. W. 904; Rosemond v. Autograph Register Co., 62 Minn. 374, 64 N. W. 925; Africa v. News Tribune Co., 82 Minn. 283, 84 N. W. 1019, 83 Am. St. Rep. 424, Hunt v. Malting Co., 90 Minn. 282, 96 N. W. 85.

But the decisions of the Supreme Court of Minnesota which are relied on proceed upon the theory that a corporation is estopped from availing itself of the defense ultra vires when otherwise it would be permitted to do an injustice, as, for instance, when the corporation has received the benefit or advantage from its act, and still retains the same. The case before us is not of that character. The notes which Johnson held evidenced the personal indebtedness of Hansen, not the indebtedness of the company. The original consideration for them passed nearly two years before the company was incorporated and two years and eight months before Hansen as its president assumed to bind it as guarantor. When Hansen sold his goods to the company the latter paid in full by issuing to him fully paid capital stock; and thereafter upon the faith and credit of the condition so established Hansen sold portions of the capital stock to others, and, on the other hand, the company went into the markets, did business, and incurred obligations. Johnson retained no lien upon the goods sold to the company, and was in no position to dictate or control the disposition of them by the owner. That he would not permit Hansen to sell them to a corporation was a threat he had no right to make in the absence of a purpose on the part of Hansen to defraud. There was no contract or promise that the corporation should buy the goods by paying the consideration or any part thereof to Johnson. The entire consideration was paid direct to Hansen, and Johnson knew it when he took Hansen's stock as collateral to the notes. There was no undertaking on the part of the

company either to pay Johnson's claim or to guarantee it as part of the consideration it was to give for what it got. In this respect the case differs from National Bank of Commerce v. Allen, 33 C. C. A. 169, 90 Fed. 545.

The state by whose authority a corporation is organized, the stockholders who compose it, and its creditors whose demands have arisen in the course of its legitimate business are all interested in having it confined to the lawful exercise of its corporate powers. In this case the creditors especially would suffer by adding to the liabilities of the bankrupt company the personal debt of its president. The company was organized to transact a mercantile business. It had no power under its charter to guarantee the debts of others, and in this case it received and retained no consideration for doing so. That it was a small corporation, the stock of which was largely owned by one man who controlled its operations, cannot alter the principles of law which are applicable. It is urged that after the transactions in question occurred Hansen purchased the stock of the other stockholders; also that certain payments of interest upon the notes were charged to the expense account of the company. But these features of the case do not furnish the elements of an estoppel.

The order is reversed, with direction to disallow the claim.