## HUMMEL v. WARREN STEEL CASTING CO.

(Circuit Court of Appeals, Eighth Circuit. March 20, 1925.)

No. 6750.

**1. Corporations ⬅388(1)—Rule as to availability of estoppel against defense of ultra vires, stated.**

If transaction was prohibited by law or by the charter right under which the corporation was doing business, or if wholly beyond its power in carrying on business, it was void, and doctrine of estoppel would not apply to defense of ultra vires; but, if it was merely an excessive exercise of the power to carry on its business, it would be merely voidable, and doctrine of estoppel against defense of ultra vires could be employed.

**2. Courts ⬅366(7)—Decision of state Supreme Court as to when defense of ultra vires is available to corporation followed by federal court.**

Decision of state Supreme Court as to when defense of ultra vires is available to corporation will be followed by the federal court.

**3. Corporations ⬅464—Could execute trade acceptances to carry on own business.**

Under Const. Mo. art. 12, § 7, a Missouri corporation had a right to execute trade acceptances to carry on its own business.

**4. Corporations ⬅374—Transactions incidental to powers authorized by charter not ultra vires.**

Whatever may be fairly regarded as incidental to those things authorized by the charter of a corporation will not be held to be ultra vires in the strict sense of the term unless expressly prohibited.

**5. Corporations ⬅388(2)—Corporation held estopped to defend on ground that transaction was ultra vires.**

Where 95 per cent. of the stock of corporation was owned by partners engaged in other business, and the corporation was the fiscal agent of the partnership, had use of its working capital, received checks sent to partnership, and was indebted to partnership in substantial sum, trade acceptances executed by corporation to partnership's creditor benefited corporation, in that it permitted corporation to use partnership's funds, and the corporation was therefore estopped, in action on acceptances, to defend on ground that transaction was ultra vires.

Appeal from the District Court of the United States for the Eastern District of Missouri; Charles B. Davis, Judge.

Claim by Fred E. Hummel, trustee, etc., against the Warren Steel Casting Company, bankrupt. Judgment for defendant, and plaintiff appeals. Reversed and remanded, with directions.

Clarence J. Silber, of Chicago, Ill. (Leo S. Rassieur and Charles D. Long, both of St. Louis, Mo., on the brief), for appellant.

Robert Burnett, of St. Louis, Mo. (Stern & Burnett, of St. Louis, Mo., on the brief), for appellee.

Before STONE and KENYON, Circuit Judges, and SCOTT, District Judge.

KENYON, Circuit Judge. Appellant is the trustee in bankruptcy of the James S. Miller Company (a corporation incorporated under the laws of the state of Illinois, engaged in business in Chicago), bankrupt. Appellee is the Warren Steel Casting Company, a corporation of the state of Missouri, also bankrupt (hereafter referred to as the bankrupt). The Mid-Continent Foundry & Manufacturing Company (hereafter designated as the partnership) was organized in the summer or fall of 1919, with the expectation of later incorporating. The partners were Charles E. Hayden, J. P. Pero, Max Broad, and W. A. Kemmerer. These partners owned 95 per cent. of the stock of bankrupt; Charles E. Hayden being president thereof, J. P. Pero vice president, Max Broad secretary, and W. A. Kemmerer treasurer. The partnership was engaged in the business of manufacturing gray iron castings. The bankrupt engaged in the manufacture of steel castings. All checks coming to the partnership were indorsed and deposited in the bank account of the bankrupt. The partnership maintained no bank account. The bookkeeper of the bankrupt looked after the books of the partnership un-

til the date of bankruptcy. The payment of his salary was divided between the two. Their offices and business were more or less intermingled. The premises occupied by the partnership were owned by a corporation, the stockholders of which were substantially the same as the stockholders of the bankrupt. The partnership had an open account with the James S. Miller Company. Mr. Miller came from Chicago to St. Louis to try to secure a settlement of his company's account, which arose from the purchase of iron scrap by the partnership. He made certain arrangements with relation to this indebtedness and received trade acceptances from the bankrupt, one of which is here set forth as a sample, viz.:

"Exhibit B.

"October 7, 1920.     No. ......

"November 10th after date pay to the order of ourselves $1,684.35 sixteen hundred eighty-four and 35/100 dollars. The obligation of the acceptor hereof arises out of the purchase of goods from the drawer.
                    "The James S. Miller Co.
                    "John T. McEnroe, Secretary.
"Warren Steel Casting Co., St. Louis, Mo.
     "Accepted.
"Date: October 7, 1920 (date accepted).
"Payable at Night & Day Bank.
                    (Designate bank or)
"Location of bank:  St. Louis, Mo.
                    (Place of payment)
"Signature:  Warren Steel Casting Co., by C. E. Hayden (signature of acceptor)."

The other two acceptances in controversy were for the sums of $1,684.35 and $1,684.44 respectively. There was another acceptance representing an accumulation on open account, which was paid later by the Warren Steel Casting Company. When the Warren Steel Casting Company became bankrupt, it owed the partnership about $17,000. The claim of the trustee on these acceptances was originally allowed by the referee, but later upon motion of the bankrupt a re-examination was made by the referee and the claim was reduced from $5,863.20 to $711.82; that sum not being questioned. The dispute here is over the three trade acceptances aggregating, with interest, $5,151.38; the same being disallowed by the referee, and his action sustained by the District Court.

It is the claim of the bankrupt that its execution of the trade acceptances is ultra vires and void.

Appellant, trustee, claims that the contract giving rise to the trade acceptances was fully executed by the James S. Miller Company; that the consideration therefor was received and retained by the bankrupt; and that the bankrupt is estopped on equitable principles from invoking the defense of ultra vires. The statement of these two positions illustrates the points in controversy. The following principles applicable to this situation are, we think, abundantly sustained by authority and reason.

[1] If the transaction between the bankrupt and the Miller Company was prohibited by law or the charter right under which bankrupt was conducting business, it was void, or if it was wholly beyond its power in carrying on its business it was void, and the doctrine of estoppel will not apply to a defense of ultra vires under such circumstances. However, if it was merely an excessive exercise of the power to carry on its business, it would at most be merely voidable, and the doctrine of estoppel as against the defense of ultra vires could be employed. In other words, if the transaction falls without the limits of a voidable contract, there can be no estoppel to the defense of ultra vires. We refer to some of the cases dealing with these propositions.

The Supreme Court has held, in the very leading case of Central Transportation Company v. Pullman's Palace Car Company, 139 U. S. 24, 59, 60, 11 S. Ct. 478, 488, 35 L. Ed. 55, that a contract absolutely ultra vires in the proper sense is void, and that neither the corporation nor the other party can be estopped to show it was prohibited by law, saying: "A contract of a corporation, which is ultra vires, in the proper sense, that is to say, outside the object of its creation as defined in the law of its organization, and therefore beyond the powers conferred upon it by the Legislature, is not voidable only, but wholly void, and of no legal effect. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right of action upon it. * * * But when the contract is beyond the powers conferred upon it by existing laws, neither the corporation, nor the other party to the contract, can be estopped, by assenting to it, or by acting upon it, to show that it was prohibited by those laws."

This court in Anglo-American Land, Mortgage & Agency Co., Ltd., v. Lombard,

132 F. 721, 736, 68 C. C. A. 89, 104, in discussing the matter arising in a controversy between a Missouri corporation and a Kansas corporation, said: "Whatever may have been the effect of the transaction in other respects, it was in this respect beyond the powers of the Missouri Company, and void. The settled rule is that a corporation possesses only such powers as are expressed or fairly implied in the statute by or under which it is created; that the enumeration of these powers implies the exclusion of all others; and that any ambiguity or doubt respecting the possession of any particular power arising out of the terms used in the statute, is to be resolved against its possession. This rule is fully recognized in the state of Missouri." The court also referred to the absence of any established rule of decisions in Missouri in respect to ultra vires acts of corporations.

Since the decision in the above case, the Supreme Court of Missouri, in First National Bank of Kansas City v. Guardian Trust Company, 187 Mo. 494, 525, 86 S. W. 109, 117, 70 L. R. A. 79, has dealt with the question here involved. This was a case where the sum of $25,000 was borrowed by the Kansas City Suburban Belt Railroad Company from the First National Bank of Kansas City, and the note was indorsed by the Guardian Trust Company. It was the contention that the note was merely for accommodation; was without consideration and of no direct benefit to defendant, and therefore ultra vires and void. While there is some difference between the powers of the Guardian Trust Company granted by the law, under which it was operating, and the powers of the bankrupt here, the difference is rather in favor of appellant's position than against it. In that case the court said: "The contract in this case was fully executed on the part of the plaintiff and its money was parted with by reason of the execution of the note by the defendant. This being true, the question confronts us: Should the defense of ultra vires as interposed by the defendant be availing under the facts as disclosed by the record? We have reached the conclusion that it should not be. It may be conceded that under the powers conferred upon the defendant by the statutes under which it was organized, it would not be authorized to simply engage in the business of becoming a purely accommodation maker or indorser of promissory notes. Upon the facts in this case, this legal principle is not applicable to the questions herein presented." The court referred with approval to the language of Whitney Arms Co. v. Barlow, 63 N. Y. 62,

20 Am. Rep. 504, as follows: "One who has received from a corporation the full consideration of his engagement to pay money, either in services or property, cannot avail himself of the objection that the contract thus fully performed by the corporation was ultra vires, or not within its chartered privileges and powers. It would be contrary to the first principles of equity to allow such a defense to prevail in an action by the corporation. It is now very well settled that a corporation cannot avail itself of the defense of ultra vires when the contract has been, in good faith, fully performed by the other party, and the corporation has had the full benefit of the performance and of the contract. If an action cannot be brought directly upon the agreement, either equity will grant relief or an action in some other form will prevail."

[2] Prior to the decision in First National Bank of Kansas City v. Guardian Trust Co., supra, there was some confusion in the Missouri decisions on the subject of the defense of ultra vires transactions. This decision seems to have clarified the judicial atmosphere, and as a holding of the highest judicial authority of Missouri the rule there established on the question here involved will be followed by the federal court.

Was the transaction in controversy here void as one prohibited by law? The provision of the Missouri Constitution which appellee claims makes it so is as follows: "Article 12, § 7: 'No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized. * * *'"

The Supreme Court of Missouri, in Joseph Schlitz Brewing Co. v. Missouri Poultry & Game Co. et al., 287 Mo. 400, 408, 229 S. W. 813, 815, referring to the same claim, that the action of the corporation was in violation of the quoted section, said: "It is argued the provisions of section 9749, R. S. 1919, and section 7 of article 12 of the Constitution of the State to the effect that 'no corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or may hereafter be organized' preclude a holding that defendants are estopped to set up that the contract in this case was ultra vires of the Poultry & Game Company. The provisions quoted were in existence at the time the cited decisions of this court were made, and the doctrine of estoppel has been applied when the constitutional provision mentioned was before the court. Summet v.

Realty & Brokerage Co., 208 Mo. loc. cit. 512, 513, 106 S. W. 614. In fact, the violation of some restriction upon the exertion of power by a corporation is the essence of ultra vires action. It would be strange if this court and the Courts of Appeals would so often apply the doctrine of estoppel in the face of the provisions quoted if their effect is to render that doctrine inapplicable in this state. Such is not the case. The question is one often decided. Those provisions but incorporate the applicable common law, which is that corporations are restricted to the powers given by their charters. The exception to the general rule of estoppel made in case a charter or provision of law 'expressly' prohibits the making of a contract by a corporation cannot be grounded upon the common law or provisions declaratory of it, as are those quoted." See, also, St. Avit et al. v. Kettle River Co., 216 F. 872, 133 C. C. A. 76, where this court discusses the same provision.

[3, 4] In view of these decisions, it is apparent that the provision of the Missouri Constitution cited does not expressly prohibit the transaction here involved. Nor does the charter right to do business under the Missouri statute prohibit it. Whatever may be fairly regarded as incidental to those things authorized by the charter of a corporation will not be held to be ultra vires in the strict sense of the term unless expressly prohibited. Undoubtedly the bankrupt could have given negotiable paper or trade acceptances to carry on its own business. Such power existed. 10 Cyc. p. 1098.

All ultra vires contracts are not void. The distinction between a contract merely in excess of the power of a private business corporation not forbidden by its charter or the law, and a contract so forbidden, has been pointed out a number of times by this court as well as by the courts of other jurisdictions.

In Lyon, Potter & Co. v. First Nat. Bank of Sioux City, Iowa, 85 F. 120, 122, 29 C. C. A. 45, 47, this court in discussing ultra vires of a commercial corporation said that it was ultra vires of such a corporation to make accommodation paper, or to guarantee the payment of the obligations of others, and then said: "An indorsement of this character, however, is not malum in se, is not prohibited by statute, and is not beyond the general scope of the powers of such a corporation. It is merely an excessive exercise of one of those powers,—an excessive exercise of the power which it has, in proper cases, to make and indorse commercial pa-per. Where such an indorsement has been apparently made for the benefit of the corporation, and has been in fact made partly for its own benefit and partly for the accommodation of another, and the corporation has received and retained the benefits of the indorsement, the contract is not void, because it is no defense for a private corporation against the enforcement of an executed contract whose benefits it holds that, while its execution was within the general scope of its powers, it involved an excessive exercise of one of them. While such a corporation retains the benefits of such a contract, it silently affirms, and must not be permitted to deny, its validity."

In Park Hotel Co. v. Fourth Nat. Bank of St. Louis, 86 F. 742, 747, 30 C. C. A. 409, 414, this court, holding that it was ultra vires of a corporation to make accommodation paper or to guarantee the payment of the obligation of others, said: "If the hotel company had ever received any consideration for these notes, and if the bank had not had notice that the corporation received nothing for them, those facts would have removed the notes from the category of accommodation paper, and the corporation might have been estopped from denying their validity."

In Evans v. Johnson, 149 F. 978, 980, 79 C. C. A. 488, 490, in holding a transaction of a bankrupt corporation ultra vires, the court said: "The state by whose authority a corporation is organized, the stockholders who compose it, and its creditors whose demands have arisen in the course of its legitimate business are all interested in having it confined to the lawful exercise of its corporate powers. In this case the creditors especially would suffer by adding to the liabilities of the bankrupt company the personal debt of its president. The company was organized to transact a mercantile business. It had no power under its charter to guarantee the debts of others, and in this case it received and retained no consideration for doing so."

In Mapes v. German Bank of Tilden, of Tilden, Neb., 176 F. 89, 90, 99 C. C. A. 609, 610, this court said: "The officers of a trading corporation undoubtedly have authority to make and deliver its promissory notes for the just debts of the corporation, and the acts of such officers in this regard are presumed to be lawfully done, when no notice to the contrary is received by the holder of the paper. But it is beyond the powers of the corporation and of its officers alike to make accommodation paper, or to guarantee

or to pay the obligations of others in which it has no interest, and from which it derives no benefit."

In St. Avit et al. v. Kettle River Co., 216 F. 872, 133 C. C. A. 76, this court held that even though a contract by a corporation was ultra vires, the right to compensation for work done thereunder was not defeated where the contract had been fully executed on its part.

In Wm. Filene's Sons Co. v. Gilchrist Co., 284 F. 664, 665, the question was the right of the Filene Company to guarantee a lease to another corporation on neighboring premises. The court said: "The case presents this plain question of fact: Has the claimant proved by a preponderance of evidence that the execution of the guaranty by the Gilchrist Company was reasonably incidental and auxiliary to its business and within the scope of its powers?" Also page 669: "After a study of the whole record we are of the opinion that the claimant has fallen far short of proving, by a preponderance of the evidence, that the execution of the lease was incidental or auxiliary to the main business of the corporation and necessary or expedient to the protection, care and management of the Gilchrist Company."

In George H. Davis & Others v. Old Colony Railroad Company, 131 Mass. 258, 275, 41 Am. Rep. 221, the railroad company and a musical instrument house guaranteed the payment of a musical festival. Held beyond power of the railroad company, the court saying: "The holding of a 'world's peace jubilee and international musical festival' is an enterprise wholly outside the objects for which a railroad corporation is established; and a contract to pay, or to guarantee the payment of, the expenses of such an enterprise, is neither a necessary nor an appropriate means of carrying on the business of the railroad corporation, is an application of its funds to an object unauthorized and impliedly prohibited by its charter, and is beyond its corporate powers. Such a contract cannot be held to bind the corporation, by reason of the supposed benefit which it may derive from an increase of passengers over its road, upon any grounds that would not hold it equally bound by a contract to partake in or to guarantee the success of any enterprise that might attract population or travel to any city or town upon or near its line." See, also, Frank I. Chenoweth v. Pacific Express Co., 93 Mo. App. 185; Smith v. Richardson, 77 Mo. App. 422; Ellett-Kendall Shoe Co. v. Western Stores Co., 132 Mo. App. 513, 112 S. W. 4; Newland Hotel Co. v. Lowe Furniture Co. et al., 73 Mo. App. 135.

Nearly all of the cases cited by appellee are where there was a gratuitous assumption of an obligation by a corporation of the debt of a third party, with no benefit or consideration received therefor—for instance, in the leading case cited, Western Maryland Railroad Company v. Blue Ridge Hotel Co., 102 Md. 307, 335, 62 A. 351, 357, 2 L. R. A. (N. S.) 887, 111 Am. St. Rep. 362, there was involved a guaranty by defendant of interest and payment of bonds of plaintiff; consideration being the location by plaintiff of hotel on line of defendant railroad. The act was held ultra vires, the court saying: "In this case, there is but one count in the declaration, and that is upon the void contract, and the proof is clear that the railroad company never received from the hotel company, either directly or indirectly, any money or property whatever under this contract. The only money it has received as a result of the contract, is that paid by passengers for transportation over its own road, or for freight carried over the road. The hotel company has paid nothing, and parted with nothing under this contract, and is therefore under all the authorities without any right of action."

It is also to be noted that the contracts giving rise to the trade acceptances were fully executed by the Miller Company.

The courts of Missouri have frequently held that the defense of ultra vires is not open to a corporation where the contract has been fully executed on one side, unless it is a contract expressly prohibited by law. Joseph Schlitz Brewing Co. v. Missouri Poultry & Game Co. et al., 287 Mo. 400, 229 S. W. 813; Winscott v. Guarantee Investment Co. of Nevada, Missouri, 63 Mo. App. 367; First Nat. Bank of Kansas City v. Guardian Trust Co., 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79; Cass County et al. v. Mercantile Town Mutual Ins. Co., 188 Mo. 1, 86 S. W. 237; Common Sense Mining Co. v. Taylor, 247 Mo. 1, 152 S. W. 5; Ellett-Kendall Shoe Co. v. Western Stores Co., 132 Mo. App. 513, 112 S. W. 4.

In Hanlon Millinery Co. v. Mississippi Valley Trust Co., 251 Mo. 553, 579, 158 S. W. 359, 364, which is perhaps the strongest authority cited by appellee, the court said: "If the contract were only executed upon one side, then the plea of ultra vires would be unavailing, because a corporation cannot receive money to do a thing and fail to do that thing, and after keeping the money, ex-

cuse itself from liability by a plea of ultra vires."

We think this controversy is reduced to the question of whether the trade acceptances were solely for the benefit of the partnership—a mere guaranty of its debt—or whether there was a direct resultant benefit to the bankrupt. If the former, the transaction was void, and estoppel will be unavailing to the defense of ultra vires; if the latter, it was merely voidable and estoppel would lie. This requires consideration of the facts. It appears that the partners in the Mid-Continent Foundry & Manufacturing Company, which we have designated as the partnership, owned 95 per cent. of the stock of the bankrupt, and the officers were practically identical; that the bankrupt acted as the fiscal agent of the partnership, had the use of its working capital, received all the checks which were sent to the partnership, the same being indorsed by Hayden, president of the bankrupt concern and one of the partners of the partnership concern; that the partnership had no bank account; that merchandise was purchased for the partnership by Mr. Broad, who was secretary of the bankrupt, and the bills therefor were sent to the partnership, submitted by Broad to Hayden, turned over by Hayden to the bookkeeper of the bankrupt, and a check therefor signed by Hayden and Kemmerer. This was the method by which the bills were paid. Hayden was president of the bankrupt, and sole salesman for the partnership. During the time of the transaction involved in these trade acceptances, the bankrupt was indebted to the parnership in a substantial sum. We think the evidence fairly discloses that such indebtedness was more than the unpaid acceptances. The premises occupied by the partnership were owned by a corporation, the Denero Realty & Manufacturing Company, the stockholders of which were largely the partners in the partnership, and stockholders in the bankrupt. The rent was paid by bookkeeping transfer of credits.

[5] The partnership, Mid-Continent Foundry & Manufacturing Company, filed a claim in the matter of the bankrupt estate of the Warren Steel Casting Company of $16,955.18, signed and sworn to by Mr. Hayden, president of the bankrupt company. The bankrupt had on some occasions paid from its fund notes executed by the Mid-Continent Foundry & Manufacturing Company, payable to James S. Miller Company. At the time of the transaction in question, Mr. Miller came from Chicago, evidently to secure the account of his company, or the money. Mr. Broad acquainted Mr. Hayden at his office with the fact that Mr. Miller was there, and asked if trade acceptances would be given. The record shows that Mr. Hayden said, "Yes, tell the bookkeeper to make them up." The acceptances were given at that time. It is apparent also that bankrupt received a direct benefit in that, having the use of the partnership funds, by giving the trade acceptances, it secured further use thereof without diminution of the amount. These funds which it had on hand for its use were created in part by the sales of the partnership. The sales of the partnership presumably included goods, or articles manufactured therefrom, that the Miller Company sold to it, the purchase price of which the trade acceptances represented. Whether the bankrupt received credit for these acceptances on its indebtedness to the partnership, the evidence does not disclose. There is no reason why it would not have done so. It had paid obligations to the Miller Company in the past on the part of the partnership. By these acceptances the Miller Company did not assume further to collect from the trustee. Had they proceeded to collect and succeeded, instead of taking the trade acceptances, the bankrupt would have had that much less use of the money of the partnership. Further the forbearance to assert rights on open account, amounting to an extension of time as to payment of the debt, entered into the consideration of the transaction. Certainly under these circumstances it cannot be claimed that out of this transaction there was not a benefit to the bankrupt. It makes no difference whether it be called unjust enrichment or something else. It was not only an indirect, but a direct, benefit. Consequently under the doctrine announced in First National Bank of Kansas City v. Guardian Trust Co., 187 Mo. 494, 86 S. W. 109, 70 L. R. A. 79, the defense of ultra vires should not prevail. We are not impressed with the suggestion that Mr. Hayden did not know what he was signing when he signed the trade acceptances.

This is a case governed by equitable principles. Under the circumstances shown by this record of a contract performed upon one side, which has resulted in direct benefit to the appellee bankrupt, and considering also the course of dealing between the partnership and the bankrupt and the practical identity of owner ship and control, it would be unconscionable to bar the trustee's claim on the ground that the act of the bankrupt, although not prohibited by law or its charter right, but at most being merely an excessive

exercise of its power in accepting these trade acceptances, was ultra vires.

There is no complaint here on the part of the public, and there is no public interest or question of public policy involved. Under the Missouri decisions, it is somewhat doubtful if the question of ultra vires can be raised by any other party than by the state against the corporation. The Missouri courts have said "that the defense of ultra vires is never sustained out of regard for a defendant, but only where an imperative rule of public policy requires it." First Nat. Bank of Kansas City v. Guardian Trust Co., 187 Mo. 494, 535, 86 S. W. 109, 121, 70 L. R. A. 79; Milton Welsh v. Ferd Heim Brewing Co., 47 Mo. App. 608. We are not called on, however, to determine this question, and do not.

The Supreme Court of the United States, in Ohio & M. Railway Company v. McCarthy, 96 U. S. 258, 267, 24 L. Ed. 693, said: "The doctrine of ultra vires, when invoked for or against a corporation, should not be allowed to prevail where it would defeat the ends of justice or work a legal wrong."

The doctrine of ultra vires applied to the facts in this case would work a legal wrong and would amount to a fraud upon the appellant.

The order of the District Court of May 12, 1924, should be reversed and the case remanded with directions to allow appellant's claim as filed, and it is so ordered.

Reversed.