THE CITY OF ABILENE *et al.* V. C. W. LAMBING *et al.*

No. 15,620.   (96 Pac. 838.)

SYLLABUS BY THE COURT.

MUNICIPAL CORPORATIONS — *Contract for Improvements* — *Estimate by De Facto Engineer*—*Injunction*. Engineers chosen and employed by the mayor and council of a city of the second class to make plans, specifications and estimates for a sewerage system for the city, and to supervise the construction of sewers, made an estimate in pursuance of section 1009 of the General Statutes of 1901, under which a contract was let and a sewer constructed. Owners of lots subject to assessment to pay for the sewer sought to enjoin the work and the assessment on the grounds that the engineers were non-residents and ineligible to be city engineers, that they had not been appointed and qualified as such, and that the estimate and contract were therefore invalid. *Held*, that, as the engineers were chosen by the officer having authority to appoint a city engineer, at a time when no one else was in possession of the office of city engineer, and as they acted in behalf of the city in respect to the improvement and had been so recognized by the city authorities and others, and as they faithfully performed their duties, there was a substantial compliance with the requirement of the statute as to an estimate, and plaintiffs were not entitled to maintain injunction upon the grounds assigned.

Error from Dickinson district court; R. F. THOMPSON, judge *pro tem.* Opinion filed July 3, 1908. Reversed.

C. C. *Towner*, for plaintiffs in error.

C. S. *Crawford*, for defendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a suit to enjoin the building of a sewer under a contract made between the city of Abilene and the Abilene Plumbing & Heating Company. It was brought by lot-owners to prevent the performance of the contract and the levy of special assessments upon their property to pay for the sewer, upon the alleged ground that a valid estimate of the

cost of construction had not been made. It was shown that the city had procured Burns & McDonnell, of Kansas City, to act as engineers in making plans, specifications and estimates for a sewerage system in Abilene, that they made the estimate of the cost of construction under which the contract was made, and that the work was in progress when the suit was begun.

The principal objection to the estimate and contract was that the engineers employed to make the estimate were non-residents of Abilene, and that they were not regularly appointed and installed as city engineers. They were employed to act as engineers in behalf of the city to plan and supervise the building of a sewerage system in Abilene, and in the contract of employment it was provided that they should give a bond in the sum of $5000 for the faithful performance of their duties. They did not act generally for the city, nor perform any function as city engineers other than that connected with the construction of sewers. It appears that at the time they were designated and employed as engineers the city did not have a regularly appointed city engineer. Local engineers were designated by the city from time to time to look after sidewalks and other specific work. In the records of the city pertaining to the letting of the sewer contracts Burns & McDonnell are referred to as city engineer, and the estimate of the cost of the sewer as one made by them as city engineer. In the contract between the city and the Abilene Plumbing & Heating Company they are spoken of as consulting engineers. The trial court found "that the estimate of the cost of construction of sewers in sewer district No. 3 was not made by any person acting in the capacity of city engineer for the city of Abilene," and it was therefore held that the estimate and contract were illegal. On this ground alone a permanent injunction was granted against the levy of any assessment or the collection of any tax upon the plaintiffs' property to pay for the sewer.

Abilene is a city of the second class, and the statute relating to contracts for improvements in cities of that class provides:

"Before the city council shall make any contract for building bridges or sidewalks. or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council; and no contract shall be entered into for any work or improvement for a price exceeding such estimate." (Gen. Stat. 1901, § 1009.)

The evident purpose of the provision is not only to enable the council to act with intelligence in making the contract for an improvement, but it is also for the protection of the owners of property who are subject to assessment for such improvement. When an estimate is filed an owner of property who may be assessed has an opportunity to inquire into the fairness and correctness of the estimate and the approximate amount of the burden which will be imposed on his property, and may then determine whether to favor or resist the improvement. There is also the further protection that no contract can be made at a price in excess of the estimate. The provision differs materially from most of those requiring an estimate for a proposed improvement in that it does not require a detailed estimate or statement of the items which enter into the improvement and the cost of each, nor does it require the estimate to be made under oath.

It is true, as contended, that when the statute provides a method for imposing and collecting assessments it should be strictly pursued, and that the provisions for the protection of the taxpayer must be closely followed. (*Hentig v. Gilmore, County Clerk*, 33 Kan. 234, 6 Pac. 304.) It would appear, however, that there has been substantial compliance with the statute and the requirements for safe-guarding the interests of taxpayers in this case. The estimate of the cost of the sewer was made by engineers chosen by the

mayor, whose selection was ratified by the action of the council. That they were efficient engineers and faithfully performed the task assigned to them is hardly a matter of dispute. The only ground of invalidity found by the trial court was that they were not acting in the capacity of city engineer. Although not regularly appointed and installed in the office of city engineer, they were *de facto* city engineers as to this improvement. While they did not assume to be in possession of the office for all purposes nor vested with all the powers and duties of a city engineer, they did act for the city in the matter of this improvement, including the making of the estimate; and their work was as efficiently and satisfactorily done as if they had been residents of the city and had all the qualifications of city engineers. The engineering done by them was a public function. The interests of the city required that a capable engineer should be chosen, and that the work should be done. No one was in possession of the office when the selection of the engineers was made. They were chosen by the mayor, who had authority to appoint a city engineer. In pursuance of the authority conferred by the mayor and council these engineers acted for the city and were recognized by the authorities and others to be acting for the city. The official recognition is shown in the record of the proceedings of the council when the contract for the construction of the sewer was awarded. After reciting the opening and reading of the bids the following reference is made to the estimate in question:

"The city engineer's estimate on sewer district No. 3, showing estimated cost of $5957, was then read by the city attorney and ordered placed on file."

Then follows a motion, which was adopted, reciting that the Abilene Plumbing & Heating Company was the lowest bidder, and that it was awarded the contract for constructing the sewers for $4178.46. It is in evidence that the company performed the work and has been

paid for it by the city. It thus appears that Burns & McDonnell assumed and performed the functions of the city engineer, that they were recognized by the mayor and council as acting in that capacity, and the mere fact that they were not regularly appointed and installed or that they were ineligible to appointment did not prevent them from becoming *de facto* city engineers, nor deprive their acts of validity when questioned by third parties. They might not be able to defend their title to the office as against an attack by the state, but the public is interested in the functions performed by these engineers in behalf of the city more than it is in the regularity of their appointment or their technical title to the office. The purpose of the statute in requiring an estimate appears to have been substantially accomplished, and, considering that the authority of the engineers emanated from those having a right to appoint, the manner in which their duties were performed, and the recognition which they received, we think that the estimate made by them can not be held invalid on the complaint of plaintiffs on the grounds stated by the district court; nor can plaintiffs avoid paying their proportionate share of the benefits resulting from the construction of the sewer because of defects in the method of appointing the engineers or of the ineligibility of the persons chosen.

There is nothing substantial in the contention that there is inconsistency between the estimate and the contract, nor that the estimate is not properly itemized. As we have seen, the statute does not require an itemized or detailed estimate.

The judgment of the district court is reversed, and the cause remanded for further proceedings.