It results that the decree appealed from must be affirmed; and it is so ordered.

---

St. AVIT et al. v. KETTLE RIVER CO.

(Circuit Court of Appeals, Eighth Circuit. August 25, 1914.)

No. 3954.

1. MUNICIPAL CORPORATIONS (§ 535*)—SPECIAL ASSESSMENTS FOR IMPROVEMENTS—GROUNDS FOR RESTRAINING ENFORCEMENT—"ANY."

Rev. St. Mo. 1899, § 5859, as amended by Laws Mo. 1901, p. 65, provides that, when a city council shall deem it necessary to pave, etc., "the roadway of any street," it shall so declare by resolution, and cause the resolution to be published as therein prescribed, and that if a protest is not filed within 10 days by a majority of the resident owners of the property liable to taxation therefor, who shall own a majority of the front feet, owned by residents of the city on the street to be improved, the council shall have power to contract for the improvement. It further provides that, when the council shall by ordinance find and declare that such a protest has not been filed, such finding and declaration shall be conclusive after the execution of the contract for the improvement. Held that, where such an ordinance was passed, a contract let, and the improvement made, property owners, who joined in a protest, could not thereafter enjoin the collection of the tax bills issued therefor against their property on the ground of the invalidity of the original resolution under which the work was ordered and done, because instead of being

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

limited to "any street," as they contended was required by the statute, it embraced parts of three different streets; no such objection having been made in their protest.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1253; Dec. Dig. § 535.*

For other definitions, see Words and Phrases, First and Second Series, Any.]

2. CORPORATIONS (§ 487*)—CONTRACTS—RIGHTS ON CONTRACTS ULTRA VIRES.
Even though a contract by a corporation was ultra vires, such fact will not defeat its right to compensation for work done thereunder, where the contract has been fully executed on its part.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1893–1898; Dec. Dig. § 487.*]

3. CORPORATIONS (§ 657*)—FOREIGN CORPORATIONS—CONTRACTS—PENALTIES FOR VIOLATION OF STATUTE.
Under Rev. St. Mo. 1899, § 1026, which makes it a penal offense for a foreign corporation to do business in the state without first procuring a license as required by the preceding section, and further provides that no foreign corporation, which fails to comply with such requirement, can maintain any suit or action in any court of the state, the civil consequence thus prescribed for a violation of the statute is exclusive, and persons affected by a contract made by a corporation, which has not complied with its requirements, cannot maintain an affirmation suit to enjoin its enforcement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2536–2541, 2550, 2552–2554; Dec. Dig. § 657.*

Foreign corporations doing business in state, see notes to Wagner v. J. & G. Meakin, 33 C. C. A. 585; Ammons v. Brunswick-Balke-Collender Co., 72 C. C. A. 622.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by John St. Avit and others against the Kettle River Company. Decree for defendant, and complainants appeal. Affirmed.

Wilson Cramer, of Jackson, Mo., for appellants.

I. R. Kelso, of Cape Girardeau, Mo. (J. G. Miller, of Cape Girardeau, Mo., on the brief), for appellee.

Before HOOK, ADAMS, and SMITH, Circuit Judges.

SMITH, Circuit Judge. [1] The complainants seek to cancel, as clouds upon their title, certain tax bills issued against their property by the city of Cape Girardeau to the Kettle River Company for grading, paving, and improving certain streets in said city. The improvements here in question were made in 1909, and before the revision of the statutes of Missouri for that year, and reference will therefore be made to the Revised Statutes of 1899 and subsequent amendments thereto. Among the laws of Missouri, as they existed at the time of the improvement, was the following substitute for section 5859 of the Revised Statutes of Missouri of 1899, as amended Laws 1901, p. 65:

"Sec. 5859. When the council shall deem it necessary to pave, macadamize, gutter, curb, grade or otherwise improve the roadway of any street, avenue or alley, or other highway, or any part thereof, within the limits of the city for which a special tax is to be levied as herein provided, the council shall, by resolution, declare such work or improvement necessary to be done, and

cause such resolution to be published in some newspaper printed in the city for two consecutive insertions in a weekly paper, or seven consecutive insertions in a daily paper, and if a majority of the resident owners of the property liable to taxation therefor, at the date of the passage of such resolution, who shall own a majority of the front feet owned by residents of the city abutting on the street, avenue or alley proposed to be improved, shall not, within ten days thereafter, file with the clerk of the city their protest against such improvements, then the council shall have power to cause a contract for said work to be let to the lowest and best bidder on plans and specifications filed therefor with the city clerk by the engineer or other proper officer, not less than one week's advertisement for bids thereon being made in some newspaper published in the city. Where the bids for said work are above the estimates, or no bids are presented, the council may readvertise for bids. When the council shall by ordinance find and declare that a majority of the resident owners of the property liable to taxation therefor who shall also own a majority of the front feet owned by residents of the city abutting on the street or alley proposed to be improved, have not filed with the city clerk a protest against such improvement such finding and declaration shall be conclusive after the execution of the contract for said improvement, and no special tax bill shall be held invalid for the reason that a protest sufficiently signed was filed with the city clerk. All county or other public property," etc., etc.

The city council adopted a single resolution declaring it necessary to improve two blocks of Main street and two blocks of Themis street crossing the part of Main street ordered improved about the center and one block of Independence street extending that distance from Main street. In other words, the improvements ordered were of contiguous streets but not all on one street.

It is claimed that the statute quoted required a separate resolution for each named street. It will not be necessary to determine whether the expression used, "improve the roadway of any street," is of such a character as to limit the power of the city by a single resolution to determine the necessity for the improvement of a single named street. Webster's International Dictionary gives the word "any" as having the same derivation as the word "one," but states that "it is often used, either in the singular or the plural, as a pronoun." It is frequently used as synonymous with "every" or "all." Bouvier's Law Dictionary; Rapalje & Lawrence Law Dictionary; volume 1, Words and Phrases, 412 to 433.

The city council adopted the resolution, and it was duly published, and these complainants came in and objected to the contemplated improvements, but made no objection on the ground that three streets were included in the resolution or that more than one street was included therein. The first time this question was ever raised was in the hearing before the referee in this case. The bill of complaint in no way made the combining of the streets in one resolution or ordinance a ground for relief.

But the statute (section 5859, Revised Statutes of 1899), as amended, expressly provided that if the council by order found and declared that a majority of the resident owners of the property liable to taxation, who also owned a majority of the front feet owned by residents of the city abutting on the street proposed to be improved, had not filed with the city clerk a protest against such improvement, such finding and declaration should be conclusive after the execution of a contract for said

improvement, and no special tax bills should be held invalid, for the reason that a protest sufficiently signed was filed with the city clerk. Prior to the enactment of this amended statute it had been held that, in an action on the tax bills, the courts would revise the action of the city council in this regard. City of Sedalia v. Montgomery, 227 Mo. 1, 127 S. W. 50. But, since the enactment of this amendment to the statute, we have no doubt that the decision of the city council, which in this case was expressly made, was conclusive upon this question, as well as all others concerning the protest of adjacent property owners, and that, having failed to suggest the combining of three streets in one resolution until the hearing before the referee, nothing arising out of that fact can now avail the complainants.

[2] At the time it took the contract, the defendant was a corporation organized under the laws of Minnesota. The articles of incorporation contained the following:

"Know all men by these presents that we, the undersigned, do hereby associate ourselves together for the purpose of carrying on a manufacturing and mechanical business, and we do hereby form and organize a corporation under and pursuant to the provisions of chapter eleven (11) of the General Laws of the state of Minnesota for the year 1873, General Statutes of said state of Minnesota 1894, sections 2805 to 2826, inclusive, and all laws of said state amendatory thereof and applicable thereto, and to that end do hereby make, adopt and sign the following articles of incorporation:

"Article 1. The name of the corporation shall be 'Kettle River Quarries Company.' The general nature of its business shall be the manufacturing and quarrying of stone of any kind or description and the selling and disposing of the same, and the doing of anything and transaction of any business that is properly incidental to or necessarily connected with a general stone manufacturing business. The principal place of business of said corporation shall be at the city of Minneapolis in the county of Hennepin and state of Minnesota."

The Constitution of Missouri, art. 12, § 7, provides:

"No corporation shall engage in business other than that expressly authorized in its charter or the law under which it may have been or hereafter may be organized."

And the same provision was made by statute (section 971, R. S. Mo. 1899).

It must be borne in mind that this corporation has fully performed the contract upon its part. It is not claimed that the defendants are expressly prohibited by the law of the state of its origin to take the contract, nor is it claimed these laws did not authorize the formation of companies for the purpose of taking paving contracts like that in question. It is simply claimed there was an absence of the assumption of such power in the articles of incorporation of the defendant company, but it is claimed that the action of the company in taking the contract was ultra vires.

The Supreme Court of the United States has said:

"The doctrine of ultra vires, whether invoked for or against a corporation, is not favored in the law. It should never be applied where it will defeat the ends of justice, if such a result can be avoided." San Antonio v. Mehaffy, 96 U. S. 312, 315 (24 L. Ed. 816); Railway Co. v. McCarthy, 96 U. S. 258, 267 (24 L. Ed. 693).

In Sedgwick on the Construction of Statutory and Constitutional Law, 73, it is said:

"It must be further borne in mind that the invalidity of contracts made in violation of statutes is subject to the equitable exception that although a corporation, in making a contract, acts in disagreement with its charter, where it is a simple question of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the agreement cannot be permitted, in an action founded on it, to question its validity. It would be in the highest degree inequitable and unjust to permit the defendant to repudiate a contract, the fruits of which he retains. And the principle of this exception has been extended to other cases. So a person who has borrowed money of a savings institution upon his promissory note, secured by a pledge of bank stock, is not entitled to an injunction to prevent the prosecution of the note, upon the ground that the savings bank was prohibited by its charter from making loans of that description."

In Thompson on Corporations (2d Ed.) § 2789, it is said:

"Thus an executed contract for the purchase by a corporation of a claim for damages, though ultra vires the charter of the corporation, has been held binding on the seller, and he could not raise the question of a lack of power to purchase the claim in an action thereon by the corporation. So one purchasing articles from a corporation and retaining the same will not be heard to object that the corporation was prohibited by law from trading in the specified articles. So the lessee of a corporation will not be allowed to escape the payment of rent for the time of his occupancy merely because the corporation had no power to execute the lease. On this point it has been said: 'Public policy is promoted by the discouragement of fraud and the maintenance of the obligation of contracts, and to permit a lessee of a corporation to escape the payment of rent by pleading the incapacity of the corporation to make the lease, although he has had the undisturbed enjoyment of the property, would be, we think, most inequitable and unjust.' So the maker of a note will not be allowed to defend an action thereon by the payee or its assignee on the ground that the corporation payee had no power to take it. So, in an action by a building association on a note given by one of its members and secured by his stock as collateral, he will not be permitted to defend on the ground that the association had no power to loan money, except on real estate. So where a contract with a corporation was one of partnership between the parties, and therefore ultra vires as to the plaintiff corporation under its charter, that fact, while it would justify a court in refusing to aid in the enforcement of the contract, so far as it remained executory, could not be urged as a defense to an action by the corporation for an accounting as to the part of the contract that had been executed. The rule is the same where the executed contract takes the form of a subscription to the stock of another corporation."

In Thomas v. Railroad Co., 101 U. S. 71, 86 (25 L. Ed. 950), it is said:

"In regard to corporations, the rule has been well laid down by Comstock, C. J., in Parish v. Wheeler, 22 N. Y. 494, that the executed dealings of corporations must be allowed to stand for and against both parties, when the plainest rules of good faith require it."

In Ellett-Kendall Shoe Co. v. Western Stores Co., 132 Mo. App. 513, 112 S. W. 4, it is said:

"The defense of ultra vires is not open to a corporation where the contract has been fully executed on the part of the other contracting party and is not expressly prohibited by law"—citing Grohmann v. Brown, 68 Mo. App. 630; City of Goodland v. Bank, 74 Mo. App. 365; Winscott v. Investment Co., 63 Mo. App. 367.

See, also, First National Bank v. Guardian Trust Co., 187 Mo. 495, 86 S. W. 109, 70 L. R. A. 79.

We conclude that this defense is not available to the complainants.

[3] Under the laws of Missouri at the time in question, a foreign corporation could not, with certain exceptions mentioned in the statute, do business in the state without first obtaining a license from the Secretary of State granted upon conditions specified in the statute. Section 1025, R. S. Mo. 1899. It was further provided:

"Sec. 1026. Penalty for Violation of Two Preceding Sections—Duties of Secretary of State and Prosecuting Attorneys—Penalties to Go Where.—Every corporation for pecuniary profit, formed in any other state, territory or country, now doing business in or which may hereafter do business in this state, which shall neglect or fail to comply with the conditions of this law, shall be subject to a fine of not less than $1,000, to be recovered before any court of competent jurisdiction; and it is hereby made the duty of the Secretary of State, immediately after August 1, of the year 1891, and as often thereafter as he may be advised that corporations are doing business in contravention to this act, to report the fact to the prosecuting attorney of the county in which the business of such corporation is located, and the prosecuting attorney shall, as soon thereafter as is practicable, institute proceedings to recover the fine herein provided for, which shall go into the revenue fund of the county in which the cause shall accrue; in addition to which penalty, on and after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand, whether arising out of contract or tort: Provided, that the provisions of this section shall not apply to railroad companies which have heretofore built their lines of railway into or through this state; nor to 'drummers' or traveling salesmen soliciting business in this state for foreign corporations which are entirely nonresident."

The defendant was a foreign corporation, took the contract, and performed the work without complying with the Missouri statutes. It will be observed that this statute first makes it a penal offense to do business without complying with the laws of Missouri, and it is probable that this action could be maintained if the statute went no further, because it has been expressly held by the Supreme Court of Missouri that the doing of business in the state without complying with the Missouri law is illegal. Amalgamated Co. v. Mining Co., 221 Mo. 7, 120 S. W. 31, 23 L. R. A. (N. S.) 492; Chicago Co. v. Sims, 197 Mo. 507, 95 S. W. 344; Tri-State Amusement Co. v. Amusement Co., 192 Mo. 404, 90 S. W. 1020, 4 L. R. A. (N. S.) 688, 111 Am. St. Rep. 511, 4 Ann. Cas. 808. But, not satisfied with making it a penal offense, the Legislature by the same act took up the question of civil liability and the jurisdiction, legal and equitable, of the civil courts, and expressly provided that:

"On and after the going into effect of this act, no foreign corporation, as above defined, which shall fail to comply with this act, can maintain any suit or action, either legal or equitable, in any of the courts of this state, upon any demand whether arising out of contract or tort."

This statute is highly penal and must be strictly construed. Bolles v. Outing Co., 175 U. S. 262, 20 Sup. Ct. 94, 44 L. Ed. 156; Erbaugh v. United States, 173 Fed. 433, 97 C. C. A. 663; Martin v. United States, 168 Fed. 198, 93 C. C. A. 484; Johnson v. S. P. Co., 117 Fed. 462, 54 C. C. A. 508.

A penal statute, plain in its terms, which creates and denounces a new offense, should be strictly construed. St. Louis Merchants' Bridge

T. Ry. Co. v. United States, 188 Fed. 191, 110 C. C. A. 63; Sedgwick on the Construction of Statutory and Constitutional Law (2d Ed.) p. 279 et seq.

In Parke, Davis & Co. v. Mullett, 245 Mo. 168, 149 S. W. 461, where the suit was brought by the corporation, the court said that:

"It was not for defendants' sake, therefore, that the provision was made, but it is a rule of state policy of which the defendants may incidentally take advantage."

If this suit had been brought by the city of Cape Girardeau, it would therefore have been true that the provision of the statute was not made for it, and this is all the more true of the appellants. It is a maxim especially applicable to statutory construction. "Expressio unius est exclusio alterius," and where, under the decision of the Supreme Court of Missouri, the rights, if any, of the appellants are not granted directly to it or to the one through whom it claims this is especially applicable. The Legislature having entered upon the determination in this penal statute of what suits could or could not be maintained in the courts of Missouri, it cannot, from any general rule of the law, be inferred that different proceedings were authorized by the fact that the contract was made illegal. True, if the statute made the contract illegal and stopped there, this suit could be maintained, but it did more, and prescribed the civil remedy, and did not include this remedy.

If this statute was applicable, then the complainants had, under the terms of the statute, a complete defense to a suit on the tax bills, and this was the exclusive remedy prescribed by the statute, and the District Court was therefore right in denying the complainants' bill, and its decree is affirmed.