No. 20,314.

NICK F. ARNHOLD, *Appellee,* V. GUST KLUG et al., *Appellants.*

SYLLABUS BY THE COURT.

1. CITY OF SECOND CLASS—*Contract for Pumping City Water—No Previous Estimate of Costs Required.* The officers of a city of the second class owning and operating a $50,000 waterworks system have discretion to contract with an electric-light company to pump the water for the system and such contract is not for a work or improvement for which a previous estimate is required by section 1413 of the General Statutes of 1909. (Gen. Stat. 1909, § 1373; *Asher v. Water Co.,* 66 Kan. 496, 71 Pac. 813.)

2. SAME. Usually such a work or improvement implies some physical change or construction effecting an amelioration in the condition of the property involved.

3. SAME—*Parties—Injunction—Resident Taxpayer.* A resident taxpayer affected by the expense of such contemplated arrangement may maintain injunction if it appears that the city is proceeding without authority.

Arnhold v. Klug.

4. SAME—*Installation of Pump—Estimate of Cost by Engineer.* The necessity of an estimate of the cost of installing in the well of the plant referred to a motor-driven pump sufficient to operate such plant before contracting therefor, suggested.

5. SAME. Such estimate is required only when the city contracts with some other party to do or supply some such work or improvement for the city, and not when the city itself contracts so to do or supply for another.

Appeal from Ellis district court; JACOB C. RUPPENTHAL, judge. Opinion filed March 11, 1916. Reversed.

*David Ritchie, G. A. Spencer,* both of Salina, and *Charles W. Reeder,* of Hays, for the appellants.

No appearance was made for the appellee.

The opinion of the court was delivered by

WEST, J.: The plaintiff, a resident taxpayer of the city of Hays, brought this action to enjoin certain of the city officers and an electric-light company from entering into a certain contract. He alleged that the city has and operates a waterworks system costing about $50,000, the pumps and engines of which with their installation cost at least $9500, the engines having power sufficient to pump 50,000 gallons of water an hour and the pumps when working at full efficiency being sufficient to throw that amount of water an hour into the mains and tanks of the city; that an ordinance was enacted authorizing a contract with the electric-light company to pump all of the water for the city for five cents a thousand gallons, not to exceed $2000 for any year, the city to install a motor-driven pump in the large well at the city's pump house; that no estimate by the city engineer had been made of the cost of pumping water by motor-driven pumps, and that the cost of the city for pumping under the proposed contract would be greater than by the use of the present system. A temporary injunction was granted, and upon motion to dissolve certain evidence was heard and a modified order made enjoining the defendants from proceeding without first submitting an estimate from the engineer as to the cost of the work and materials called for in the contract, but not re-

37—97 KAN.

straining them from proceeding anew whenever such requirements should be met. Other matters were averred and other points considered which need not be mentioned. The defendants appeal and contend that neither the contract for pumping nor the agreement to install a motor-driven pump is a work or improvement within the meaning of section 1413 of the General Statutes of 1909 requiring an estimate, but are matters within the discretion of the city officials; and also that the plaintiff was not authorized to bring this suit. The plaintiff has filed no brief.

Chapter 122 of the Laws of 1911 authorizes the city to purchase, procure, provide and contract for the construction of various things, including electric current. Section 1413 of the General Statutes of 1909 provides:

"Before the city council shall make any contract for building bridges or sidewalks or for any work on streets, or for any other work or improvement, an estimate of the cost thereof shall be made by the city engineer and submitted to the council; and no contract shall be entered into for any work or improvement for a price exceeding such estimate."

This is section 68 of the city of the second class act of 1872 (Laws 1872, ch. 100), and is found in article 3, concerning the general powers of the mayor and council, and follows various sections providing for improvements, including streets, sidewalks, shade trees, market houses, hospitals, waterworks, levees and "all improvements of a general nature in the city." (Gen. Stat. 1909, § 1379.)

In considering a similar provision it was stated in *Kansas City v. Cullinan,* 65 Kan. 68, 68 Pac. 1099:

"It is quite apparent that the purpose of this section is to prevent fraud and imposition in the letting of contracts, as well as to inhibit the creation of a liability against the city by the mayor and council before the maximum cost of a proposed improvement shall be known." (p. 72.)

(See, also, *Abilene v. Lambing,* 78 Kan. 484, 96 Pac. 838.)

A work or improvement within the meaning of this section usually implies some physical change or construction. "Improvement" has been defined as—

"An amelioration in the condition of real or personal property effected by the expenditure of labor or money for the purpose of rendering it useful for other purposes than those for which it was originally used, or more useful for the same purposes. It includes repairs or addition to buildings, and the erection of fences, barns, etc." (2 Bouvier's Law Dictionary, Rawle's Third Revision, p. 1517.)

A "local improvement" has been defined as—

"A public improvement which by reason of its being confined to a locality, enhances the value of adjacent property, as distinguished from benefits diffused by it throughout the municipality." (*City of Chicago v. Blair*, 149 Ill. 310, syl. ¶ 4, 36 N. E. 829.)

In the same decision such an improvement was held to involve the idea of permanency. (See *I. C. R. R. Co. v. City of Decatur*, 154 Ill. 173, 176, 38 N. E. 626.) The change of the plan from doing the pumping to contracting to have it done by the electric-light company, aside from the installation of the pump in question, does not involve a physical construction or change, but appears to be within the general powers of the city officers. (Gen. Stat. 1909, § 1373; *Asher v. Water Co.*, 66 Kan. 496, 71 Pac. 813.)

It is contended that the provisions of section 265 of the civil code, that "any number of persons whose property is or may be affected by a tax or assessment so levied, or whose burdens as taxpayers may be increased by the threatened unauthorized contract or act, may unite in the petition filed to obtain such injunction," are not sufficient to authorize the maintenance of this suit by the plaintiff.

Decisions are cited as to the special interest in the subject matter of the action that one must have before he can be a plaintiff. This section has been passed upon, however, and in *Gas Co. v. Railway Co.*, 74 Kan. 661, 87 Pac. 883, the right of an individual taxpayer to maintain such a suit was upheld. This was followed and approved in *Meistrell v. Ellis County*, 76 Kan. 319, 91 Pac. 65.

A careful examination of the record shows that while the contemplated contract involves the installation by the city of the motor-driven pump referred to, it does not appear that the city has contracted with any one for erecting or furnishing such pump. Section 1413 covers contracts made by the city with some other party for some work or improvement to be furnished or supplied by such party to the city, and does not apply under the circumstances here presented. Very likely, before the city enters into a contract with any one to furnish or install for it such pump, an estimate of the cost will be

necessary, but this question is not now before us and is not decided.

The arrangement thus far appears to be within the discretion of the city officials. The modified order of injunction is therefore reversed.