GARLAND v. SAMSON et al.

(Circuit Court of Appeals, Eighth Circuit. September 16, 1916. Rehearing Denied November 6, 1916.)

No. 4656.

1. WORDS AND PHRASES—"REPAIR"—"IMPROVEMENT."

The word "repair," as defined by Webster: "Act of repairing; restoration or state of being restored, to a sound or good state after decay, waste, injury, etc."—is applied by courts in the construction of statutes and contracts. The word "improvement," defined by the same authority as "a valuable addition or betterment as a building, clearing, drain, fences, etc., on land," is a broader word than "repair," but includes the latter and is also practically applied by the courts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Improvement; Repair.]

2. LANDLORD AND TENANT ⟨⟩29(1)—LEASES—VALIDITY AND CONSTRUCTION— EFFECT OF SUBSEQUENT LEGISLATION.

Defendants leased a large hotel building from plaintiff's grantor for a term of years. The lease required them to operate a first-class hotel on the premises, and they agreed to "accept the premises * * * in the condition which they are now in and hereby further covenant and agree to keep the same on the inside of said building in good repair, and to make all improvements and repairs which may be necessary during the term of this lease at their own cost and expense." For the latter purpose they were to be allowed a credit of $3,000 on rent. The lessor covenanted to keep in repair the exterior of the building during the term of the lease in as good condition as it then was. The building was then equipped with outside fire escapes in compliance with the state law, which however also required interior standpipes, or in their absence outside standpipes, and the building had neither. The statute imposed the duty of providing such equipment, under penalty on both "proprietor and lessee." During the term of the lease a law was enacted (Laws Minn. 1913, c. 569, § 8; Gen. St. 1913, § 5120) requiring stairways as fire escapes on the outside of such buildings, to be supplied within six months, instead

of ladders as were on the leased building, and making it a misdemeanor for any one to lease such a building without first complying with its provisions. Defendants remained in possession for nearly a year after the passage of such act without making any demand for the installation of such fire escape, and then abandoned the lease refusing to pay rent for the latter part of their occupancy. In an action to recover the rent, *held*, that the lease when made was valid, the obligation to construct the inside standpipes being by its terms imposed on defendants; that, assuming that it did not also impose upon them the duty of building the outside stairways required by the subsequent statute as "improvements," such statute did not make prior valid leases invalid and unenforceable, and that the direction of a verdict for defendants was error.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 85; Dec. Dig. &⚍29(1).]

In Error to the District Court of the United States for the District of Minnesota; Page Morris, Judge.

Action at law by William Garland against C. C. Samson and H. J. Tremain. Judgment for defendants, and plaintiff brings error. Reversed.

William D. Mitchell, of St. Paul, Minn. (Pierce Butler and George Hoke, both of St. Paul, Minn., on the brief), for plaintiff in error.

William H. Oppenheimer, of St. Paul, Minn. (Edmund S. Durment, Albert R. Moore, and Charles C. Haupt, all of St. Paul, Minn., on the brief), for defendants in error.

Before HOOK and SMITH, Circuit Judges, and AMIDON, District Judge.

SMITH, Circuit Judge. The defendants, C. C. Samson, and H. J. Tremain, owned the Willard Hotel in St. Paul, Minn., and its furnishings. They then deeded the premises to H. C. Suttle and took a lease on the property and its furniture of him dated October 13, 1910. The lease was for five years with the privilege of ten from November 1, 1910. It provided for the payment of $1,200 a month rent, payable on the 15th of each month. It contained the following provisions:

"Said lessees hereby agree to accept the premises herein let and demised in the condition which they are now in and hereby further covenant and agree to keep the same on the inside of said building in good repair, and to make all improvements and repairs which may be necessary during the term of this lease at their own cost and expense.

"Provided, however, that said lessees shall be allowed the sum of three thousand dollars ($3,000.00) during the first year of this lease in the making of such repairs and improvements as may be agreed upon between the parties hereto, and that as such *improvements* are made, said lessees shall be entitled to reduce the rent to be paid by such sum or sums as said improvements shall actually cost, not to exceed in the aggregate the sum of three thousand dollars ($3,000.00). * * * The said lessees hereby covenant and agree that they will at all times during the operation of this lease operate a first-class hotel in the premises herein demised. * * * And the lessor, for himself, his heirs, personal representatives and assigns, hereby covenants and agrees to and with said lessees that he will at his own cost and expense keep in repair the exterior of the building now located on the premises hereinbefore described in as good condition as they are now, in and for the full term of this lease."

On October 6, 1913, H. C. Suttle and wife sold and conveyed the hotel property to the plaintiff, William Garland, and thereby the plain-

tiff succeeded to the rights of Suttle under said lease. This suit was brought to recover the rent reserved and payable from February 15, 1914, to January 15, 1915, for $14,400 and interest.

Several defenses were pleaded in the case, but the allegations of the complaint were admitted, and the defendants assumed the burden of proof. The case was determined upon the matters stated in the third count of the answer, which set up the failure to supply the building with statutory fire protection as required by the laws of Minnesota. The case was tried to a jury, and at the close of all the evidence all parties moved for a directed verdict. The motion of the plaintiff was overruled, and that of the defendants sustained, and the jury accordingly returned a verdict for the defendants, judgment was entered on the verdict, and the plaintiff sued out this writ of error.

The case has been argued and submitted wholly upon the effect of the statutes of Minnesota with reference to fire protection. Section 2365 of the Revised Laws of Minnesota classifies public and quasi public buildings and embraces in the second classification hotels and other structures of more than two stories high with ten or more sleeping rooms where sleeping accommodations are furnished to the public. Section 2367 is as follows:

"2367. Each six thousand feet of area, or fractional part thereof, covered by a building in class two, shall be provided with a one and three-fourths inch inside standpipe, and sufficient one and one-fourth inch hose connected therewith on each floor, and constantly furnished with sufficient water pressure from waterworks or pump which can be put into instant action; or for each such area there shall be a two and one-half inch metallic standpipe, with metallic ladder attached above the first story, located upon the outside of the wall, extending above the roof, and so situated as to be accessible from the roof, and from each story above the first, with valves and male hose connections at every story and on the roof, and female hose connection at base of the pipe, of such size and pattern as to allow connection with the equipment of the local fire department. There shall also be provided for each eighty-five hundred feet of such area, or fractional part thereof, at least one efficient chemical fire extinguisher on each floor containing sleeping apartments. If, for lack of waterworks or steam to operate pumps, the inside standpipe is not practicable, then, in addition to the fire extinguishers, there shall be placed in the hallway on each floor containing sleeping apartments one barrel of water and two pails, labeled 'For fire purposes only,' for each twenty-five hundred feet of area, or fraction thereof, on such floor. A red light shall be kept burning all night at the head of each stairway above the first floor, and at or near each approach to a stationary fire escape. In each sleeping room above the first floor the following printed notice shall be conspicuously posted: 'Exit in case of fire. Upon leaving this room, turn to the (here insert "right" or "left") and by passing (here insert distance in feet) you will reach a red light which indicates (here insert "fire escape" or "stairway").'"

"2372. The proprietor and lessee of every building in any of the classes hereinbefore mentioned shall equip the same in the manner prescribed, and every failure so to do shall constitute a misdemeanor. Every fire warden, marshal, chief of fire department, chief of police, and building inspector of an incorporated place, or, where no such officer exists, the town and county boards, shall enforce the provisions of this chapter. Every person who shall fail to comply with any such provision within thirty days after written notice so to do from any such officer shall be guilty of a gross misdemeanor. All fines collected hereunder shall be turned into the school fund of the county in which the conviction occurs.

"2373. In cities of the first, second, and third classes, every building maintained or held out to be a hotel, or place where sleeping accommodations are

237 F.—3

furnished to the public, shall be provided with more than one exit from each story directly to the ground, and such ·exits must always be kept in good repair, free from any obstruction, and ready for immediate use. If any such building in any city be not provided with suitable metal fire escapes on two sides or two ends, or a side and an end, then every outside sleeping apartment shall be equipped with a three-eighths inch hempen rope, plainly visible and securely attached therein, of length and strength sufficient to reach the ground, and to sustain five hundred pounds weight.

"2374. Every person owning, keeping, maintaining, or managing any building of the character mentioned in section 2373 which is not constructed, equipped, and maintained in accordance therewith shall be guilty of a misdemeanor, the minimum punishment whereof shall be a fine of twenty-five dollars, or imprisonment for thirty days. He shall have no lien in any form upon property belonging to or in the possession of any lodger or boarder therein, and shall not be entitled to maintain any action for board, lodging, or accommodations."

## The Legislature in 1905 also enacted the following:

"Section 1. Every building or structure kept, used or maintained as, or advertised as, or held out to the public to be an inn, hotel or public lodging house, or place where sleeping accommodations are furnished to the public, whether with or without meals, shall have and be provided with, at each end of all halls from every story or floor higher than three stories, a suitable fire escape, reaching to within twelve (12) feet of the ground, and shall have and be provided with a way of egress to such fire escape, which way of egress and fire escape shall at all times be kept free and clear of any obstruction, and in good repair and ready and suitable for immediate use, or in lieu thereof in any and all buildings or structures kept, used or maintained as, or advertised as, or held out to the public to be an inn, hotel, public lodging house or place where sleeping accommodations are furnished to the public, whether with or without meals, there shall be supplied and kept at all times, in plain sight, and securely attached therein and thereto, in every bedroom or sleeping apartment on the second floor or above the second floor a manilla rope, with knots not more than 15 inches apart, at least five-eighths of an inch in diameter, and of sufficient strength to sustain a weight and strain of at least five hundred pounds; and every owner of any such building or structure, in this section described, who shall fail to comply with the provisions of this section shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined not less than five dollars, nor more than twenty-five dollars, and in default of payment thereof shall be imprisoned for not less than ten days. Provided this act shall not apply to hotels or lodging houses which are already provided with ample outside iron fire escapes, or to fire proof buildings.

"Sec. 2. Any person or persons keeping, maintaining, controlling or managing any building or structure kept, used or maintained as, or advertised as, or held out to the public to be an inn, hotel, public lodging house or place where sleeping accommodations are furnished to the public, whether with or without meals, shall supply and shall keep at all times, and in plain sight, and securely attached therein and thereto, in every bedroom, or sleeping apartment, on second floor or above second floor, a manilla rope, with knots not more than 15 inches apart, at least five-eighths of an inch in diameter, and of sufficient strength to sustain a weight and strain of at least five hundred pounds, and on failing to supply such ropes such person or persons shall be deemed guilty of a misdemeanor and on conviction thereof shall be fined not less than five· dollars, nor more than twenty-five dollars, and in default of payment thereof, may be imprisoned not less than ten days.

"Sec. 3. All inns,· hotels, public lodging houses and places of twelve sleeping rooms or more where sleeping accommodations are furnished to the public, whether with or without meals, in the state of Minnesota shall be subject to the provisions of this act, except as already herein provided."

The balance of this law is devoted to providing for the inspectors and deputies and describing their duties, and the like. This was the

state of the law at the time of the making of the lease here in question. The building was occupied under the lease until April 18, 1914, and for more than 2½ months of the time for which recovery is sought in this case.

Let us first inquire whether this lease was invalid when made, and then whether it was subsequently invalidated by later legislation.

It is strenuously insisted that, under the facts of this case, while Suttle and Garland may have been the proprietors of the soil, they were not the proprietors of the hotel; but we find it unnecessary to pass upon that question. The law in question, section 2372, imposed a duty to equip the hotel upon "the proprietor and lessee." To use the language of another branch of the law, the duty of the proprietor may have been a nondelegable one in the sense that nothing he could do could free him from the criminal responsibility imposed by law if the hotel was not properly equipped with fire escapes, yet the fact remains that the Legislature cannot have assumed that the plaintiff and the defendants could literally personally install the instrumentalities required. It must have contemplated that the parties responsible would let a contract to install the fire protection required.

Now let us see what these parties agreed to:

1. The said lessees hereby agree to accept the premises herein let and demised in the condition in which they are now in.

2. The lessees agree to keep the same on the inside of said building in good repair and to make all improvements and repairs that may be necessary during the term of this lease at their own cost and expense. For this latter agreement they would receive $3,000 in credit on the rent.

3. And the lessor for himself, his heirs, personal representatives, and assigns, hereby covenants and agrees to and with said lessees that he will at his own cost and expense keep in repair the exterior of the building now located on the premises heretofore described in as good condition as they are now in and for the full term of this lease.

4. That the said lessees hereby covenant and agree that they will at all times during the operation of this lease operate a first-class hotel in the premises herein demised.

It will be observed that, while the lessor only agreed to keep the exterior of the building in repair, the lesses agreed to keep the interior in repair and to make all improvements. There is no reason to believe that these words were used in other than their ordinary meaning.

[1] The word "repair," as defined by Webster's New International Dictionary, means:

"Act of repairing; restoration or state of being restored, to a sound or good state after decay, waste, injury, etc.; supply of loss; reparation; mending."

With this meaning the word has been practically applied by the courts in the construction of statutes and contracts. This is true in Minnesota. Kingsted v. Wright County Co-op. Co., 116 Minn. 131, 133 N. W. 399; Minneapolis Plumbing Co. v. Arcade Inv. Co., 124 Minn. 317, 145 N. W. 37. And the term has generally been so construed. Woodbury Company v. Tackaberry Co., 166 Iowa, 642, 148

N. W. 639; the dissenting opinion of Mr. Chief Justice Deemer in Ross v. Sheldon (Iowa) 154 N. W. 499; Fuchs v. City of Cedar Rapids, 158 Iowa, 392, 139 N. W. 903, 44 L. R. A. (N. S.) 590; Farraher v. City of Keokuk, 111 Iowa, 310, 82 N. W. 773; Pittsburg & Birmingham R. Co. v. Pittsburg, 80 Pa. 72; Stephens' Ex'rs v. Milnor, 24 N. J. Eq. 358; County of Brown v. County of Keya Paha, 88 Neb. 117, 129 N. W. 250, Ann. Cas. 1912B, 790; Platte County v. Butler County, 91 Neb. 132, 135 N. W. 439; Wattles v. So. Omaha Ice & Coal Co., 50 Neb. 251, 69 N. W. 785, 36 L. R. A. 424, 61 Am. St. Rep. 554; Wyoming Coal Mining Co. v. Stanko, 22 Wyo. 110, 135 Pac. 1090, 138 Pac. 182; Weaver v. Templin, 113 Ind. 298, 14 N. E. 600; Bettenbrock v. Miller (Ind.) 112 N. E. 771; Romack v. Hobbs, 13 Ind. App. 138, 41 N. E. 391; Id., 32 N. E. 307; Board of Commissioners of White County v. Gwin, 136 Ind. 562, 36 N. E. 237, 22 L. R. A. 402; Dwight v. Ludlow Manufacturing Co., 128 Mass. 280; Todd v. Inhabitants of Rowley, 90 Mass. (8 Allen) 51; State v. White, 16 R. I. 591, 18 Atl. 179, 1038; Gulf City Street Railway & Real Estate Co. v. Galveston, 69 Tex. 660, 7 S. W. 520; Martinez v. Thompson, 80 Tex. 568, 16 S. W. 334; Hazlewood v. Pennybacker (Tex. Civ. App.) 50 S. W. 199, 202; Verdin v. St. Louis, 131 Mo. 26, 33 S. W. 480, 36 S. W. 52; Id., 27 S. W. 447; Parker-Washington Co. v. Meriwether, 172 Mo. App. 344, 158 S. W. 74; Noel v. Town of Lees Summit, 166 Mo. App. 114, 148 S. W. 194; Mayer v. Morehead, 106 Ga. 434, 32 S. E. 349.

On the other hand, the word "improvement" is defined by Webster's New International Dictionary as: "A valuable addition or betterment, as a building, clearing, drain, fences, etc., on land." The word "improvement" is a broader word than "repair," but includes the latter. This word has been practically applied by the courts in accordance with this definition in Minneapolis Plumbing Co. v. Arcade Inv. Co., 124 Minn. 317, 145 N. W. 37; N. W. Lumber & Wrecking Co. v. Parker, 125 Minn. 107, 145 N. W. 964; Arnhold v. Klug, 97 Kan. 576, 155 Pac. 805; Parker v. Wulstein, 48 N. J. Eq. 94, 21 Atl. 623; Bettenbrock v. Miller (Ind.) 112 N. E. 771; Meyer v. City St. Improvement Co., 164 Cal. 645, 130 Pac. 215; South Park Commissioners v. Wood, 270 Ill. 263, 110 N. E. 349; Kohn v. City of Missoula, 50 Mont. 75, 144 Pac. 1087; Walker v. Tillis, 188 Ala. 313, 66 South. 54, L. R. A. 1915A, 654; O'Neill v. Lyric Amusement Co. (Ark.) 178 S. W. 406; A. Leschen & Sons Rope Co. v. Moser (Tex. Civ. App.) 159 S. W. 1018; City of Roswell v. Bateman, 20 N. M. 77, 146 Pac. 950; In re Howard Laundry Co., 203 Fed. 445, 121 C. C. A. 555.

[2] It thus appears that the term "improvement" is a much broader one than that of "repair"; that the construction of new fire protection is not included in the term "repairs," but if such protection is permanently added to the real estate it is an improvement. The grantor or plaintiff made no agreement at all as to making any improvements. The only persons who made any agreement as to improvements were the defendants, and but for the fact that in the agreement the landlord contracted to make all repairs upon the exterior of the building,

and the lessees agreed to keep the same on the inside in good repair, and immediately followed this by the agreement "to make all improvements and repairs that may be necessary during the term of this lease at their own cost and expense," as the repairs thus contracted to be made manifestly referred to inside repairs and not to outside ones which the lessor had agreed to make, we are in some doubt whether the word "improvements" should not be limited to inside improvements. But for this doubt we would hold that the lessees contracted to make all improvements including the exterior fire escape steps. A portion of the court would so hold; but, in view of the fact that we all reach the same conclusion on other grounds, we do not pass upon that question.

At the time this lease was made the outside fire escapes were in accordance with the law. The only possible additional requirement as to the outside was an alternative one. It required an interior standpipe and provided that in the absence of such inside standpipe there should be an exterior one. The parties had a right, as between themselves, to contract as to which of them should comply with the fire protection laws, and at the time of the making of the lease there was no contemplation of a violation of the law, but an arrangement by which the lessees agreed to do all things necessary to make the building suitable for hotel purposes as then required by law. There was nothing illegal about the contract as made, and therefore nothing to invalidate the lease at that time.

Very great stress is placed by the lessees upon Leuthold v. Stickney, 116 Minn. 299, 133 N. W. 856, 39 L. R. A. (N. S.) 231, Ann. Cas. 1913B, 405, but the most casual reading of that case will show it has no application. In that case the landlord leased an apartment which was not equipped with any fire escapes as had been then by law required for more than four years. The tenant demanded they be placed on the building, and the landlord failed or refused to comply with this demand. The tenant remained in the apartment about a month, paid the rent up to the then present time, and moved out. He was sued for the balance of the rent after he vacated the premises, and the court held there could be no recovery. How different is this case? The tenant had contracted to make at least all interior improvements which included all the fire protection not already provided by the landlord and retained possession of the hotel property for more than 2½ months and refused to pay any rent for the period and got a verdict presumptively because he had failed to make the improvements he had contracted to make he could occupy the hotel until evicted and refuse to pay rent for the period he occupied it. We know of no law under which he would be entitled to do this.

We have said nothing as to whether this is a case upon which the landlord is entitled to the independent judgment of this court upon this question (Northwestern Terra Cotta Co. v. Caldwell, 234 Fed. 491, —— C. C. A. ——), because the Supreme Court of Minnesota has never passed upon the question here involved.

We turn now to the act of April 28, 1913. This act required stairways in place of ladders as fire escapes upon the outside of the build-

ing. Owing to their location, there is doubt, as already indicated, as to which parties, under the contract, were bound to erect them, though both were probably so bound under the statute; but there is no decision of the Supreme Court of Minnesota construing this statute. This law provided that it should be complied with within six months after the passage of this act; that is, by October 28, 1913. The lessees remained in possession until April 18, 1914, or five months and twenty days, and no application was ever made for the installation of the fire escapes. The law provided:

"Any person, firm or corporation * * * who shall let a building used for such business without having first complied with the provisions of this act, shall be guilty of a misdemeanor." Gen. St. Minn. 1913, § 5120.

This was a prospective statute, especially as it was a criminal one.

Of course, we are aware that there are decisions that when a building is rented especially for a legal business, and the state in the execution of its police power declares that business illegal, this operates to avoid the lease. This has especially been held where buildings were leased for saloon purposes and the state enacted prohibitory liquor laws, but the Legislature of Minnesota did not declare the hotel business illegal, but required hotel buildings to be equipped with certain fire protection, and only made it illegal to let a building not so provided. In this case the landlord did not rent the building after the law was enacted. The Legislature did not expressly declare existing leases void where the law was not complied with but by imposing a penalty made future ones invalid. It is a maxim especially applicable to statutory construction, Expressio unius est exclusio alterius. St. Avit v. Kettle River Co., 216 Fed. 872, 133 C. C. A. 76. And when a statute expressly punishes the future letting of property not equipped with fire protection as required by it by plain implication, all prior leases, legal when made, remain valid and enforceable.

In Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 165, 172, 35 Sup. Ct. 398, 400 (59 L. Ed. 520, Ann. Cas. 1916A, 118), after stating the facts and some propositions of law applicable thereto, the court said:

"And this is but a form of stating the elementary proposition that courts may not refuse to enforce an otherwise legal contract because of some indirect benefit to a wrongdoer which would be afforded from doing so or some remote aid to the accomplishment of a wrong which might possibly result —doctrines of such universal acceptance that no citation of authority is needed to demonstrate their existence, especially in view of the express ruling in Connolly v. Union Sewer Pipe Co., 184 U. S. 540 [22 Sup. Ct. 431, 46 L. Ed. 679]."

And on page, 174 of 236 U. S., page 401 of 35 Sup. Ct. (59 L. Ed. 520, Ann. Cas. 1916A, 118), the court said:

"It is true that there are no words of express exclusion of the right of individuals to act in the enforcement of the statute or of courts generally to entertain complaints on that subject. But 'it is evident that such exclusion must be implied for a twofold reason: First, because of the familiar doctrine that, 'where a statute creates a new offense and denounces the penalty, or gives a new right and declares the remedy, the punishment or the remedy can be only that which the statute prescribes.' Farmers' & Mechanics' Bank v. Dearing, 91 U. S. 29, 35, 23 L. Ed. 196; Barnet v. National Bank, 98 U. S.

555, 25 L. Ed. 212; Oates v. National Bank, 100 U. S. 239, 25 L. Ed. 580; Stephens v. Monongahela Bank, 111 U. S. 197, 4 Sup. Ct. 336, 337, 28 L. Ed. 399; Tenn. Coal Co. v. George, 233 U. S. 354, 359 [34 Sup. Ct. 587, 58 L. Ed. 997]."

We have not closely followed the line of the briefs, which were substantially three times as long as the record, but have said enough to show that the court below erred in sustaining the motion for directed verdict, and the case is reversed and remanded, with directions to set aside the verdict and grant a new trial.